907 A.2d 1083

**Darla FRITZ and Gordon Fritz, Appellants,**

**v.**

**Hazel WRIGHT, Carolyn Temple, Bonnie Stuart, and Samuel Wright, Individually and Doing Business as Wright's Lane Properties, Appellees.**

Supreme Court of Pennsylvania.

Argued April 5, 2006.

Decided Oct. 18, 2006.

222

Nina B. Shapiro, Esq., for Darla Fritz and Gordon Fritz.

Gregory Buchwald Heller, Esq., for amicus curiae PA Trial Lawyers Association.

Peter Francis Schuchman, Jr., Esq., Wyomissing, for Hazel Wright, et al.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *OPINION*

Justice BAER.

Appellant Gordon Fritz[1] appeals from an order of the Superior Court reversing the order of the Court of Common Pleas of Chester County denying a motion for a mistrial filed by Hazel Wright, Carolyn Temple, Bonnie Stuart, and Samuel Wright (Appellees). The issue before this Court is whether 42 Pa.C.S. § 5104(b) and Article I, Section 6, of the Pennsylvania Constitution require that the same ten jurors vote identically on each question listed on a special interrogatory verdict sheet to sustain a proper "verdict" in the case. For the reasons that follow, we hold that any ten jurors who agree on a given interrogatory furnish a sufficient majority as to that question, and a verdict that requires a series of responses to interrogatories should be sustained even where a different grouping of ten jurors comprise the required majority for each individual question posed in a set of special interrogatories. Accordingly, we reverse the Superior Court's contrary ruling.

---

1. As this appeal pertains only to the liability for Mr. Fritz's injuries, hereinafter "Appellant" refers to Mr. Fritz. The jury awarded Appellant Darla Fritz no damages on her loss of consortium claim.

This matter arises out of personal injuries sustained on November 17, 1998 when Appellant lost his balance and fell on Appellees' driveway. Appellant was diagnosed with a shoulder injury, was treated medically, and allegedly missed over a year of work.

Appellant initiated this action by Writ of Summons and subsequent complaint filed on November 29, 2000, averring negligence by Appellees with respect to the design and maintenance of the driveway. Beginning on February 3, 2003, a three-day trial commenced before a twelve-member jury, during which the jury heard testimony that, among other damage claims, Appellant lost $45,000 in wages and suffered $6,300 in medical expenses as a result of his shoulder injury. After trial, the court submitted to the jury a verdict slip containing seven interrogatories.[2] The twelve-person jury rendered its initial verdict in favor of Appellant for $51,300. Appellees' counsel requested that the jury polled. After polling the jury twice, the trial court concluded that the jury had not reached a proper verdict because ten out of the twelve jurors did not agree on the amount of damages sustained by Appellant.[3]

2. Specifically, the questions were:
 1. Do you find [Appellees] were negligent?
 2. Was [Appellees'] negligence a substantial factor in causing Appellant harm?
 3. Was [Appellant] contributorily negligent?
 4. Was [Appellant's] contributory negligence a substantial factor in bringing about his harm?
 5. Taking the combined negligence that was a substantial factor in bringing about [Appellant's] harm as 100 percent, what percentage of that causal negligence was attributable to [Appellees] and what percentage was attributable to [Appellant]?
 6. State the amount of damages, if any, sustained by [Appellant] as a result of the accident, without regard to and without reduction by the percentage of causal negligence, if any, that you have attributed to him. The Court will perform the mathematical reduction based on the figures the jury supplies in this Verdict Slip.
 7. State the amount of damages, if any, sustained by [ ] Darla Fritz. Appellant's brief, at 6–8.

3. As will be discussed further herein, in 1971, the Pennsylvania Constitution was amended to permit the General Assembly to replace the traditional requirement of unanimous jury verdicts with a five-sixths rule in civil cases. PA. CONST., ART 1, § 6 (1971). The legislature did so, providing that "a verdict rendered by at least five-sixths of the jury shall

Specifically, only nine out of the twelve jurors believed that Appellant should receive an award of $51,300. The trial court, therefore, instructed the jury to resume its deliberations.

Following further deliberations, the jury again returned to the courtroom and rendered its final verdict in favor of Appellant for $51,300. The trial court again polled the jury. The polled jury was unanimous that Appellees were negligent (question one); that Appellees' negligence was a substantial factor in causing Appellant's harm (question two); and that Appellant was contributorily negligent (question three). On the issue of whether Appellant's contributory negligence was a substantial factor in bringing about his harm (question four), ten jurors agreed that it was not, while jurors four and eight stated that Appellant's contributory negligence was a substantial factor in bringing about his harm. On the question regarding the amount of damages (question six), while ten jurors believed that Appellant sustained $51,300 in damages, jurors four and nine stated that Appellant should only receive an award of $6,300.[4] Thus, while ten jurors agreed on each individual interrogatory, the identities of the dissenters as to questions four and six were not consistent, and therefore, the same ten jurors did not agree as to all of the questions material to the verdict and award.

Appellees' counsel moved for a mistrial, arguing that the jury was confused and had not reached a proper verdict because the same ten jurors did not agree on each question. The trial court denied Appellees' motion and concluded that the jury had reached a valid verdict because at least ten out of twelve jurors agreed on every question on the verdict slip. The trial court opined that "[i]t is not unreasonable to infer that, rather than being confused, jurors no. 8 and 9 simply reached different conclusions about how to most fairly compensate [Appellant] in light of the evidence of damages, just as

be the verdict of the jury and shall have the same effect as a unanimous verdict of the jury." 42 Pa.C.S. § 5104(b).

4. Although not pertinent to this appeal, the jury was unanimous that Mrs. Fritz was not entitled to any damages on her loss of consortium claim and thus question seven is not in controversy.

they differed regarding the evidence of [Appellant's] contributory negligence." Tr. Ct. Op. at 10. Thus, the trial court denied Appellees' motion for a mistrial.

Appellees appealed to the Superior Court, arguing that the verdict was improperly rendered because only nine jurors agreed with it in its entirety. A divided panel of the Superior Court agreed with Appellees, vacated the judgment, and remanded for a new trial. The panel majority examined the language of the Pennsylvania Constitution, which provides, in relevant part:

> Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case.

PA. CONST. ART. 1, § 6. In accordance with this provision, the General Assembly enacted 42 Pa.C.S. § 5104(b), which provides that "[i]n any civil case a verdict rendered by at least five-sixths of the jury shall be the verdict of the jury and shall have the same effect as a unanimous verdict of the jury." The Superior Court framed the issue as whether the term "verdict" as used in the Pennsylvania Constitution and Section 5104(b) "consists of all of the answers to the interrogatories or whether each individual interrogatory is a separable 'verdict.' " *Fritz v. Wright*, 872 A.2d 851, 852 (Pa.Super.2005). Addressing this question, the majority determined that verdict meant the former, reasoning that in the interest of justice it could not parse the verdict sheet and count the votes on individual questions as if each were a separate verdict. Rather, it held that the verdict upon which five-sixths of the jurors must agree is comprised of the total verdict inclusive of each interrogatory response. In this case, the Superior Court found that the total verdict was agreed to by only nine jurors, and thus was not a proper verdict, as nine was less than five-sixths of the total jury. The Superior Court majority noted that its holding would not prevent jurors with dissenting views from fully participating in the deliberation process. Instead, the majority opined that the dissenting jurors could continue

to express their disagreements throughout the deliberation process, and seek to persuade others to their views.

Judge Olszewski filed a dissenting opinion, in which he opined that the "same-juror rule" established by the majority unconstitutionally burdens a litigant's right to a jury of twelve persons. He argued that there was a proper verdict in this case because at least ten jurors agreed Appellees were negligent; at least ten jurors agreed that Appellant's contributory negligence was not a substantial factor in bringing about his harm; and at least ten jurors agreed that Appellant was entitled to $51,300 in damages. In support of his position, Judge Olszewski relied on *Blum v. Merrell Dow Pharm. Inc.*, 534 Pa. 97, 626 A.2d 537, 538 (1993), in which we articulated the constitutional right "entitling a party who properly demands a twelve person jury to a verdict from a jury of twelve persons," and explicitly recognized that it is of constitutional importance for each one of those twelve jurors to be able to engage fully in deliberations. *Id.* at 546–47. He explained that the same-juror rule in effect obviated the role of dissenting jurors by effectively nullifying any of their votes that occurred subsequent to their first minority vote. Under such circumstances, he argued the parties would receive jury deliberations by fewer than twelve jurors in violation of the Pennsylvania Constitution as interpreted in *Blum*.

We granted allowance of appeal to determine whether Section 5104(b) and Article I, Section 6, of the Pennsylvania Constitution requires that the same ten jurors vote the same on each question listed on a special interrogatory verdict sheet for there to be a "verdict." As this is a question of law, our scope of review is plenary and our standard of review is *de novo*. *See Touloumes v. E.S.C. Inc.*, 899 A.2d 343, 346 (2006).

Appellant argues that neither the Pennsylvania Constitution Article I, Section 6, nor 42 Pa.C.S. § 5104(b) requires that the same ten jurors must agree on the answers to all interrogatories on a verdict slip, and that the Superior Court's same-juror rule unconstitutionally infringes on Appellant's right to a full and complete deliberation and decision from a jury of twelve. *See Smith v. Times Publ'g Co.*, 178 Pa. 481, 36 A. 296, 297

(1897). Appellant argues that the Superior Court created an unduly burdensome rule that allows the parties to dissect the jury's decision-making process and invade the sanctity of the jury, thus undermining the jury process.

Appellant further argues that the Superior Court majority opinion would complicate the jury deliberation process, thus undermining legislative intent in providing for less than unanimous verdicts, which Appellant posits was to simplify the jury deliberation process and reduce judicial inefficiency. Rather, Appellant advocates for the position espoused by Judge Olszewski, commonly referred to as the "any-majority rule," under which each matter submitted to the jury must be decided by a five-sixths majority, but the same five-sixths majority need not carry over from question to question.

Appellant points to decisions from New York and New Jersey, which have interpreted their respective five-sixths jury statutes to hold that a different five-sixths of the jurors could answer each of the interrogatories, as long as every determination was supported by at least five-sixths of the jury. *See Mahoney v. Podolnick*, 168 N.J. 202, 773 A.2d 1102 (2001) (holding that under the "any-majority rule," jurors vote on every issue irrespective of their votes on other issues, juror's votes on different issues do not have to be logically consistent, and a plaintiff prevails if five-sixths of jurors finds in his favor on each element of the cause of action); *Schabe v. Hampton Bays Union Free Sch. Dist.*, 103 A.D.2d 418, 480 N.Y.S.2d 328 (N.Y.App.Div.1984) (holding that the validity of a verdict does not depend upon consistency of individual juror voting patterns, and it is not required that all interrogatory answers approved by five-sixth vote must have the concurrence of the same jurors). As Judge Olszewski did, Appellant also relies on our decision in *Blum*, 626 A.2d at 538, and argues that the Superior Court majority erodes the constitutional entitlement to full consideration by a jury of twelve.

On the other hand, Appellees argue in support of the same-juror rule. In the context of this case, they argue that the verdict announced by the jury was not really a verdict at all, because only nine of twelve jurors agreed with all components

of the verdict announced by the foreperson. Largely echoing the Superior Court majority, Appellees argue that special interrogatories are not verdicts themselves, but rather are simply answers necessary to a verdict. *See Harsh v. Petroll*, 840 A.2d 404, 438 n. 32 (Pa.Cmwlth.2003), aff'd *Harsh v. Petroll*, 584 Pa. 606, 887 A.2d 209 (2005).

Appellees also challenge Appellant's reliance on cases from New York and New Jersey. Appellees note that the number of states endorsing the any-majority rule is roughly the same as the number of states rejecting the rule, although they only identify one case that rejects the any-majority rule. *See O'Connell v. Chesapeake & Ohio R. Co.*, 58 Ohio St.3d 226, 569 N.E.2d 889, 898 (Ohio 1991) (holding that in a case tried under comparative negligence principles, three-fourths of the jury must agree as to both negligence and proximate cause, and only those jurors who so find may participate in the apportionment of comparative negligence).

Appellees urge us to reject the argument that the Superior Court's holding invades the province of the jury and is an unconstitutional burden on the litigant's right to have the case decided by a jury of twelve because, they argue, nothing in the Superior Court decision suggests that less than twelve jurors may consider the issues. Appellees also rely on *Blum*, arguing that because litigants have a right to a trial by jury of twelve, they have the corresponding right to a verdict agreed to by at least ten of those twelve.

The parties' arguments and the positions of the Superior Court majority and dissent articulate two possible approaches to non-unanimous verdicts.[5] First, the position adopted by the Superior Court majority and advocated by Appellees is the same-juror rule, also known as the "same-jurors rule" or "identical jurors rule," which requires that the same jurors agree on all of the questions comprising the verdict slip. States adopting the same-juror rule express

5. For a collection of those cases supporting the any-majority rule and those supporting the same-juror rule, see *Gourley v. Neb. Methodist Health Sys.*, 265 Neb. 918, 663 N.W.2d 43 (2003), a case in which the Nebraska Supreme Court adopted the any-majority rule.

concern that to do otherwise would actually permit a party to prevail by persuading fewer than the requisite number of jurors of the entirety of the case. *See, e.g., State ex rel. Boyer v. Perigo,* 979 S.W.2d 953, 957 (Mo.Ct.App.1998) (reasoning that in a state requiring a three-fourths' majority of a twelve member jury, "[i]f any nine jurors could agree on liability and any nine jurors could agree on damages, a plaintiff could ultimately prevail by convincing only six persons unanimously of her position with regard to both liability and damages"). The same-juror rule rests on the premise that only a single "verdict" is returned in any given case, even where the verdict is made up of several steps that build upon one another. Patricia E. Weeks, *Have They Decided or Have They Not Decided?,* 50 LA.B.J. 430, 431 (2003). Under this view, a verdict is "a non-fragmentable totality .... a whole and separate entity ... represent[ing] one ultimate finding on the basis of several issues." *Hendrix v. Docusort, Inc.,* 18 Kan. App.2d 806, 860 P.2d 62, 65 (1993), and, consequently, a juror not concurring with the five-sixths majority on a prefatory issue could not participate as a voting member on issues discussed thereafter.

In contrast, in states subscribing to the any-majority rule, any ten jurors agreeing on each of a series of questions is sufficient to support a verdict (or nine jurors, depending on the minimum required for non-unanimous verdicts). *See, e.g., Mahoney,* 168 N.J. 202, 773 A.2d 1102; *Schabe,* 103 A.D.2d 418, 480 N.Y.S.2d 328; *Juarez v. Superior Court,* 31 Cal.3d 759, 183 Cal.Rptr. 852, 647 P.2d 128 (1982). These states support adoption of the any-majority rule by observing that it is consistent with the policy that led to the abandonment of the unanimity rule. *See Weeks, supra,* at 431; *Schabe,* 103 A.D.2d at 423, 480 N.Y.S.2d 328 ("Nonunanimous verdicts decrease the number of mistrials and retrials and thus reduce court congestion, delay and the cost of maintaining the judicial system. They also reduce the number of unjust verdicts deriving from juror obstinacy or dishonesty and discourage compromise verdicts.").

The question before us is whether to adopt the same-juror rule or the any-majority rule. To answer this question we must interpret the Pennsylvania Constitution, Art. 1, Section 6, and 42 Pa.C.S. § 5104(b). A provision of the constitution will be interpreted not in a strained or technical manner but as understood by the people who adopted it. *Firing v. Kephart,* 466 Pa. 560, 353 A.2d 833, 835 (1976). Similarly, the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a); *see also Commonwealth v. Conklin,* 897 A.2d 1168, 1175 (2006). In pursuing that end, we are mindful that the statute's plain language generally provides the best indication of legislative intent. *See Conklin,* 897 A.2d at 1175; *Commonwealth v. Gilmour Mfg. Co.,* 573 Pa. 143, 822 A.2d 676, 679 (2003). "When the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. § 1903(a); *Shiffler,* 879 A.2d at 189. Consistent with the Statutory Construction Act, this Court has repeatedly recognized that rules of construction, such as consideration of a statute's perceived "object" or "purpose," are to be resorted to only when there is an ambiguity in the meaning of the words. *Sternlicht v. Sternlicht,* 583 Pa. 149, 876 A.2d 904, 909 (2005); *Ramich v. WCAB (Schatz Elec., Inc.),* 564 Pa. 656, 770 A.2d 318, 322 (2001).[6]

---

**6.** Pursuant to Section 1921(c), when the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

With these principles in mind, we turn to the language of the constitutional and statutory provision at hand. Before 1971, Pennsylvania law required that verdicts be unanimous. The constitution was amended in 1971 to permit the legislature to "provide . . . by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case." PA. CONST. ART. 1, § 6. By passing this constitutional amendment, the public manifested its intent to require less than unanimity in civil cases and reaffirmed the constitutional right to a jury of twelve persons. *See Blum*, 626 A.2d at 546.

In accordance with this constitutional change, the legislature passed into law the current version of Section 5104(b), which provides that a verdict rendered by "at least five-sixths of the jury shall be the verdict of the jury." 42 Pa.C.S. § 5104(b). Preliminarily, nothing in Article 1, Section 6, or Section 5104(b) defines "verdict" or requires that where special interrogatories are employed to guide a jury, the same ten jurors agree on each answer for there to be a verdict agreed upon by five-sixths of the jury. We must therefore attempt to ascertain the meaning of "verdict" as used in the constitutional and statutory provisions, construing the word in accordance to the rules of grammar and its common and approved usage. *See* 1 Pa.C.S. § 1903(a).

The Superior Court found that the "verdict" upon which five-sixths of the jurors must agree is comprised of the result of all interrogatory answers:

> [T]he "verdict," which answered "No" to the interrogatory asking whether contributory negligence was a factor and which awarded $51,300 in damages to [Appellant], was not the verdict of Jurors 4, 8, or 9[; as such, it was a] verdict of only nine of the twelve jurors, and thus was not a verdict at all.

*Fritz*, 872 A.2d at 852–53. The Superior Court, therefore, found that the verdict was the award of $51,300, which was agreed to by ten jurors, with jurors four and nine dissenting.

(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.
1 Pa.C.S. § 1921(c).

However, because the ten-juror majority arrived at the $51,300 verdict through deliberations that included dissents from jurors four and eight on the issue of Appellant's contributory negligence, the Superior Court found that the verdict, *i.e.*, the finding for Appellant in the amount of $51,300, was actually the verdict of only nine jurors. We cannot accept this interpretation.

To understand why we respectfully disagree with the Superior Court's analysis, it is helpful to examine the difference between general verdicts and general verdicts with special findings, also known as general verdicts with special interrogatories. Generally, a verdict is the decision of a jury reported to the court on matters submitted to the jury at trial. *Roth v. E. Connellsville Coke Co.*, 242 Pa. 23, 88 A. 781 (1913). In Pennsylvania, verdicts may be general, special, or general with special findings.[7] *See Fulforth v. Prudential Ins. Co. of Amer.*, 147 Pa.Super. 516, 24 A.2d 749 (1942). A general verdict is a finding by the jury in terms of the issue or issues referred to them and is, either wholly or in part, for the plaintiff or for the defendant. *Id.* at 753; *see also* BLACK'S LAW DICTIONARY (8th ed.2004) (defining general verdict as a verdict "by which the jury finds in favor of one party or the other"). Thus, when a trial judge requires only a general verdict slip, a jury will be call upon only to find "for plaintiff in the amount of ..." or "for defendant." No other substance will appear on the general verdict slip.

In contrast, when the trial court exercises its discretion to employ a general verdict with special findings, such as occurred in this case, the analytical subparts of the

7. A special verdict, which is not implicated in this case, is one in which the jury finds all material facts in the case, leaving the ultimate decision of the case on those facts to the court. *See Simpson v. Montgomery Ward & Co.*, 354 Pa. 87, 46 A.2d 674 (1946); *Fulforth*, 24 A.2d at 753; BLACK'S LAW DICTIONARY (8th ed.2004) (defining special verdict as "[a] verdict in which the jury makes findings only on factual issues submitted to them by the judge, who then decides the legal effect of the verdict"). A practice similar to a special verdict occurs when the trial judge submits special questions to the jury and then directs a verdict on the basis of their answers. *See Schwab v. Continental-Equitable Title & Trust Co.*, 330 Pa. 540, 199 A. 150 (1938).

jury's process will be set forth in individual questions to be answered by the jury, and the answers thereto are always given in connection with the ultimate general verdict.[8] *See Fulforth*, 24 A.2d at 753; *Schwab v. Continental–Equitable Title & Trust Co.*, 330 Pa. 540, 199 A. 150, 151 (1938); Pa.R.C.P. No. 2257 ("Upon the court's own motion or the request of any party, the jury . . . shall return, in addition to a general verdict or finding, such specific findings as will determine the issues among all parties."). To the extent the answer is "no" to a particular question, the general verdict slip with special findings becomes a *de facto* "verdict for defendant." Conversely, should the jury arrive at the last question, the slip's "bottom line" looks akin to the general verdict slip in that the amount of damages awarded to the plaintiff are specified.

▆ As we explained in *Brown v. Ambridge Yellow Cab Co.*, 374 Pa. 208, 97 A.2d 377 at 381 (1953), when special findings are employed in connection with a general verdict, the jury's decision is the general verdict, not the answers to the individual interrogatories:

> Taking the answers [to the interrogatories] as a whole one cannot say that they represent a mathematical exactness and factual certainty of such impeccability as to overturn the deliberate and solemn conclusion reached in the general verdict. It would appear that the jury, after due deliberations, reached its conclusions and then perfunctorily and hurriedly attempted to answer the voluminous interrogatories. Logic does not require, and there is no law which compels acceptance of the special findings here, shot through as they are with inconsistencies, vagueness and inconclusiveness, as against the general verdict, which with authority and definitiveness declares: "we, the Jurors . . . find for the Plaintiff . . . in the amount of $8000.00. . . ."

8. A party is not entitled to have special interrogatories submitted to the jury. *See Willinger v. Mercy Catholic Med. Ctr. of S.E. Penna., Fitzgerald Mercy Div.*, 482 Pa. 441, 393 A.2d 1188, 1190 (1978). Rather, the decision whether to submit special interrogatories to a jury is a ruling left to the discretion of the trial court. *Id.*

In fact, in the usual case where special findings are consistent with the general verdict, the special findings are considered merely advisory. *Greiner v. Commonwealth,* 334 Pa. 299, 6 A.2d 67, 68 (1939) (stating that, in a case affirming a verdict accompanied by special findings, "the special findings are of no consequence because, while advisory, they were not controlling; the important thing was the general verdict.").

Regardless of whether the jury is delivering a general verdict or general verdict with special findings, its deliberation will encompass all aspects of the case that are necessary to arrive at a decision. These aspects do not change depending on whether the jury is asked to discuss them orally before writing its general verdict or set forth the components of such discussion through answers to special interrogatories. *See, e.g., Panek v. Scranton Ry. Co.,* 258 Pa. 589, 102 A. 274 (1917).

With a general verdict, as long as ten jurors agree with the finding and award as presented to the court, there can be no issue regarding whether the requisite five-sixths concurred. In this case, had the jury rendered a general verdict without special findings, it would have been for Appellant in the amount of $51,300. This would have been the result even though two jurors dissented on the issue of Appellant's contributory negligence. In fact, with a general verdict alone, it would not be known that two jurors had dissented on those issues because the litigants would not be entitled to inquire into the jury deliberation process.

However, the verdict in this case was not a general verdict, but a general verdict with special findings. If we were to accept Appellees' position, and that of the Superior Court majority, the fortuitous fact that this verdict included special findings would permit counsel to delve into the otherwise sacrosanct jury deliberation process to ascertain disagreements among particular jurors or particular subparts of their discussions, whereas this would not be permitted if the verdict had been a general verdict without interrogatories. We see no reason to permit invading the sanctity of the jury deliberations in the case of special findings where such invasion would not be permitted in the case of a general verdict without

special findings. *See, e.g., Pratt v. St. Christopher's Hosp.,* 581 Pa. 524, 866 A.2d 313, 325 (2005) ("it is axiomatic that inquiry into the motives of individual jurors and conduct during deliberations is never permissible....); *Carter by Carter v. U.S. Steel Corp.,* 529 Pa. 409, 604 A.2d 1010, 1013 (1992) ("The rule in Pennsylvania, as well as in a majority of jurisdictions, is that a juror is incompetent to testify as to what occurred during deliberations' ").

The analytical thicket arising when a jury of lay people are confronted with the components and subcomponents of negligence, contributory negligence, comparative negligence, and potential other legal theories have caused trial courts of this Commonwealth to utilize general verdicts with special findings, such as here. *See, e.g.,* PENNSYLVANIA SUGGESTED STANDARD CIVIL JURY INSTRUCTION § 3.03A (providing for six interrogatories in a case of comparative negligence and apportionment among joint tortfeasors). These questions permit a jury unlearned in the law to frame and structure their deliberations, if they so choose.

In the instant case, after discussions and deliberations, the jury presumably moved on to answer the special questions. When doing so, they discovered that ten agreed that Appellant's contributory negligence was not a substantial factor in bringing about the harm, and a different ten agreed that the result should be in favor of Appellant in the amount of $51,300. This bottom-line finding for Appellant is the verdict, *Brown,* 97 A.2d at 381; the only difference resulting between employ of a general verdict and the general verdict with special findings used here is that now we can ascertain that two jurors dissented on the issues of Appellant's contributory negligence and the amount of damages.

This result is not only permissible, but required by the plain language of the Pennsylvania Constitution art. 1, section 6 and 42 Pa.C.S. § 5104(b), which eliminated the requirement of juror unanimity. Practically speaking, if, as the Superior Court concluded, the two dissenting jurors on question four were not permitted to vote on subsequent questions, then every subsequent question must be decided unanimously by

the remaining ten jurors if a verdict is to be reached. This, however, flouts the public's intent in amending the Constitution and the General Assembly's clearly expressed intention that civil cases are to be decided by five-sixths of a twelve-member jury, not unanimously by a jury of ten. 42 Pa.C.S. § 5104(b).

Additionally, this decision is wholly consistent with and, indeed, is compelled by our decision in *Blum*, 534 Pa. 97, 626 A.2d 537. In *Blum*, we remanded the case for a new trial where it had originally been tried before a jury of eleven rather than of twelve due to a juror's illness on the day of trial. Although the eleven-member jury was unanimous in its result, we emphasized the constitutional dimension of preserving a twelve-member jury in which each member has the potential to voice a view that resists that of the majority and to sow sufficient doubt to prevent the formation of a five-sixths majority:

> While it is true that under subsection 5104(b) five-sixths of the jury shall be the verdict of the jury and shall have the same effect as a unanimous verdict of the jury, this in no way means that a verdict may be reached by a jury consisting of less than the constitutionally mandated twelve person jury where a demand for such is properly made. It is a logical assumption that if twelve jurors had deliberated in this matter, the five-sixths verdict might never have been reached. Moreover, an entirely different verdict may have been arrived at. Obviously, this would depend upon the leadership and persuasive abilities of the one juror who did not participate in the deliberations.

*Id.* at 546–47.

If we were to adopt the same-juror rule, as the Superior Court did, we would violate the spirit of *Blum* by effectively disenfranchising the dissenting voters, denying them the opportunity to participate meaningfully in the decision of the subsequent material questions. This rule would contradict *Blum* by depriving litigants of their right to have twelve jurors fully participate in the entire deliberative process. The right to have a jury of twelve decide one's case means that the

jurors who have been empanelled are required to consider and decide each of the issues submitted to them by the court. The absence of any one voice from that process or the relegation of that voice to the margins by diminishing its influence invalidates the sanctity of the jury trial as defined by *Blum*. Once a juror has voted against, for example, a defendant's liability, the same-juror rule would have the effect of silencing that juror as to subsequent interrogatories pertaining to contributory negligence and damages. With respect to this case, under the same-juror rule, a juror who dissented on the issue of Appellant's contributory negligence would not have any voting power in determining the amount of damages, thus removing himself from further deliberations contrary to *Blum*.

The Superior Court acknowledged the disenfranchisement argument, but found it sufficient that jurors with dissenting views "may continue to express their disagreements throughout the deliberation process and seek to persuade others to their point of view." *Fritz*, 872 A.2d at 853 n. 3. We disagree. A dissenter stripped of his or her voting power does not have the same voice as a qualified, voting juror. As the Appellate Division of the New York Supreme Court aptly noted in *Schabe*:

> Under the [same-juror rule], the casting of a dissenting vote on any question reduces the dissenter's influence to a state of practical impotence and creates a mandate for continued unanimity among the other jurors on the remaining questions if the verdict is to survive. The dissenter is then bereft of real voting power, for his vote on the remaining questions can no longer affect the verdict

*Schabe*, 103 A.D.2d at 424, 480 N.Y.S.2d 328.[9]

 We find further support for the any-majority rule in our system of bifurcated trials. In a bifurcated trial, the jury

---

**9.** The dissent posits that the 1971 amendment to the language of Article 1, Section 6 did not alter the prior constitutional requirement that verdicts are to be rendered by a unanimous jury and that, therefore, our decision today results in a "sea change" never contemplated by the electorate in amending the constitution. This is simply not the case. Our decision today is consistent with and necessitated by our decision in *Blum*. There, we rejected the idea that the constitutional amendment

decides one issue, typically liability, and then, if it finds for the plaintiff, the jury proceeds to hear evidence on and decide another issue, typically damages.[10] Under the rule we announce today, a juror who dissents during the liability phase is eligible and must participate in the damages phase. *See Blum*, 534 Pa. 97, 626 A.2d 537. If we were to adopt the same-juror rule applied by the Superior Court, however, then the dissenting jurors in the first phase of a bifurcated trial would be disenfranchised in the second phase because after dissenting, their subsequent vote would be meaningless, thus contradicting the requirement that civil cases are to be decided by five-sixths of a twelve-member jury. *See id.*, 42 Pa.C.S. § 5104(b).

Finally, we note that other jurisdictions have found that requiring the same five-sixths jurors to agree on every issue

changed the twelve member jury requirement. Instead, we noted that the only thing changed by the amendment was the requirement that the verdict be unanimous. We stated:

> The people of this Commonwealth, by constitutional amendment in 1971, altered the unanimity requirement by authorizing the General Assembly to provide by law that a verdict may be rendered by not less than five-sixths of the jury in any civil case. The General Assembly then promulgated the five-sixths verdict in subsection 5104(a) and (b) of the Judicial Code, 42 Pa.C.S. § 5104(a), (b). The unanimity feature, therefore, was changed.

*Id.* at 545–46.

As discussed herein, we believe a position, such as that advocated by the dissent, would specifically violate our holding in *Blum* requiring a twelve member jury because requiring five-sixths of the jury to vote unanimously on every component question posed to it would lead to requiring a unanimous verdict of ten.

While the dissent states that the idea of a "jury of ten" is illusory as it facially fails to account for two jurors in our twelve juror system, its argument essentially amounts to saying that the right to stand outside the polling place and engage in protest, no matter how meaningful, equates to the right to vote. If the dissent's view carried the day, two jurors would loose such right to vote. It is this disenfranchisement of jurors that would represent an unwise and unwarranted "sea change" from the law's development from *Blum* to our decision today.

10. Although occasionally, as has become the practice for most asbestos cases, issues of medical causation and damages are bifurcated and tried before issues involving theories of liability and product identification, in the practice known as "reverse bifurcation." See, e.g., *Crawford Lee Jones v. Johns–Manville Corp., et al.*, 22 Phila.Co.Rptr. 91, 93 (Pa.Com. Pl.1991).

would "result in time consuming writs, mistrials, frustrating delays and confusion for the trial judge and jury-all adding to the heavy burden of the civil trial process. *See Juarez,* 183 Cal.Rptr. 852, 647 P.2d at 133; *see also Gourley v. Nebr. Methodist Health Sys., Inc.,* 265 Neb. 918, 663 N.W.2d at 59 (noting that the flexibility of the any-majority rule reduces the risk of hung juries, as well as all of the associated costs and delays); *Schabe,* 103 A.D.2d at 423, 480 N.Y.S.2d 328 ('[T]he any [majority] principle reduces the number of mistrials and retrials while diminishing confusion for both court and jurors and does not interfere with the operation of the jury or sacrifice fairness.'); *Young v. J.B. Hunt Transp.,* 781 S.W.2d 503, 505 (Ky.1989) (adopting the any majority rule and noting '[i]f we require agreement of the same nine persons on each of numerous disputed questions of fact, we invite a greater number of mistrial cases' ").[11]

 The jury's verdict in this case was for Appellant in the amount of $51,300. When asked by the trial court if that was their verdict, ten out of twelve jurors agreed that it was. The fact that two jurors dissented on one of the preceding interrogatories, in effect disputing nothing more than the path the jury followed to reach the consensus, is irrelevant to the fact that ten jurors agreed on the final verdict. The order of the Superior Court is reversed.

Chief Justice CAPPY, and Justice CASTILLE, Justice NEWMAN, Justice EAKIN and Justice BALDWIN join the opinion.

Justice SAYLOR files a dissenting opinion.

11. We also note that the same-juror rule threatens the pervasive practice of guiding jury deliberations by providing special interrogatories. Under this rule, after each question, jurors would have to ask who among them was qualified to answer subsequent questions, a determination that might not always be straightforward. For example, in a case where the plaintiff had a product liability claim based on defective design and another claim based on failure to warn, the Court of Appeals of Ohio held that a juror who dissented on one theory was free to vote on the other, because the claims were "separate and unrelated" and were "two distinct causes of action." *Gable v. Village of Gates Mills,* 151 Ohio App.3d 480, 784 N.E.2d 739 (Ohio Ct.App.2003), rev'd on other grounds, 103 Ohio St.3d 449, 816 N.E.2d 1049 (Ohio 2004).

Justice SAYLOR, dissenting.

I agree with the holding of the Superior Court majority that Article 1, Section 6 of the Pennsylvania Constitution and Section 5104(b) of the Judicial Code require that a valid civil verdict must be fully supported by at least ten of twelve jurors.

As the majority notes, historically, the Pennsylvania Constitution required jury verdicts to be unanimous. *See* Majority Opinion at 231–32, 907 A.2d at 1090. Under this scheme, there was obviously no room for an "any majority" rule. For example, indisputably all jurors had to agree as to liability and damages before a verdict could be rendered awarding money damages. In 1971, however, the Constitution was amended to authorize the General Assembly to provide that "a verdict may be rendered by not less than five-sixths of the jury in any civil case." PA. CONST. art. 1 § 6. This uncomplicated change facially conveys only the idea that the threshold number of jurors in complete agreement concerning the verdict may be lowered. I do not believe that the straightforward terms of the amendment put the electorate on notice of a sea change in the idea that there must be complete agreement among the jurors favoring the verdict.

The majority, however, reasons that this constitutional amendment was intended, not only to lower the threshold number of jurors in full agreement with a verdict, but also to implement the additional, substantial, and unstated innovation of skewing the character of the essential agreement, such that differing five-sixth majorities must be considered relative to component questions associated with an underlying verdict. None of the majority's justifications, however, persuades me that the amendatory language should be read in so broad a fashion.

First, the majority indicates that requiring the rendering of a verdict with which ten of twelve jurors are in full agreement "flouts the public's intent in amending the constitution and the General Assembly's clearly expressed intention that civil cases are to be decided by five-sixths of a twelve-member jury, not

242

unanimously by a jury of ten." Majority Opinion at 237, 907 A.2d at 1093. This "jury of ten" idea is illusory, however, as it facially fails to account for two jurors in Pennsylvania's twelve-juror system. Moreover, the quoted passage substitutes for the concept of the rendering of a "verdict," as clearly expressed in both Article 1, Section 6, and Section 5104(b), the looser expression "civil cases are to be decided." Utilizing the language of the Constitution and the statute and putting aside the "jury of ten" rhetoric, the majority's rationale does not sustain itself. In fact, requiring the rendering of a verdict supported in full by ten of twelve jurors is perfectly consistent with the electorate's action in amending the Constitution, as well as the Legislature's clearly expressed intention, to lower the threshold to permit verdicts to be rendered that are supported in full by five-sixths of a twelve-member jury.

Second, the majority reasons that the litigants' right to a jury trial would be undermined if all jurors were not required to consider and decide each of the issues submitted to them by the court. *See* Majority Opinion at 237–38, 907 A.2d at 1093–94. The majority, however, offers no real support for the proposition that jurors must accede to the reasoning of a majority of others with respect to any aspect of their own rationale underlying a verdict. Rather, jurors have traditionally been permitted to dissent to a verdict for any legitimate reason, whether it is a belief that there is no liability or that there is no causally connected injury, or, conversely, an understanding that liability and damage exist in a case in which a majority of jurors favors a defense verdict. Further, juries as collective bodies routinely do not consider dependent issues where their decision on a predicate issue is dispositive; I find nothing in logic, in precedent, or, in particular, in the amendment to Article I, Section 6, that supports precluding a juror from doing the same within his or her own individualized assessment, assuming full and fair deliberation.

The majority's remaining rationale appears to advance policy considerations tending to favor the implementation of the "any majority" rule that does not require that at least ten jurors agree to all aspects of a verdict. While I do not dispute

that some of these factors would have weight in a policy evaluation, again, I do not believe that a policymaking venture is appropriate here. Rather, it is my position that the public policy has been set by the electorate and the General Assembly via Article I, Section 6 and the enabling legislation. Since the majority raises such matters, however, I note my belief that the policy considerations are more greatly mixed than the majority opinion portrays.

First, the majority reasons that a requirement that at least ten of twelve jurors wholly agree with the jury verdict "effectively disenfranchises the dissenting voters," denying them the opportunity to participate meaningfully in the decision of the subsequent material questions. *See* Majority Opinion at 238, 907 A.2d at 1094. From the perspective of an individual juror, however, it appears to me that one who believes that there is no liability is as (or more) likely to feel disenfranchised if he or she is forced to contribute a vote allocating damages than if permitted to rest on a determination of no liability.[1] Additionally, the notion that such a juror has no ability to continue to participate meaningfully in the discussions during a damages assessment is conjectural, as it is based upon a fixed and conclusory set of assumptions about the dynamic process of juror deliberation. For example, as Appellee highlights, it gives no attention Pennsylvania law's allowance for the possibility of compromise verdicts. *See Elza v. Chovan,* 396 Pa.

---

1. *Cf. O'Connell v. Chesapeake & Ohio R.R. Co.,* 58 Ohio St.3d 226, 569 N.E.2d 889, 897 (1991) ("It is illogical to require, or even to allow, a juror to initially find a defendant has not acted causally negligently, and then subsequently permit this juror to assign some degree of fault to the same defendant. Likewise, where a juror finds that a plaintiff has not acted in a causally negligent manner, it is incomprehensible to then suggest that this juror may apportion some degree of fault to the plaintiff and thereby diminish or destroy the injured party's recovery."); *Juarez v. Superior Court of Los Angeles County,* 31 Cal.3d 759, 183 Cal.Rptr. 852, 647 P.2d 128, 136 (1982) (Richardson, J., dissenting) ("[A]s a practical matter, it does not seem ... realistic to assume that a juror who concludes that a party is not culpable would be able conscientiously to apportion financial responsibility to that party."); *id.* ("[T]he requirement of consistency in a juror's votes ... is supportive of the entire deliberative process, encouraging reason instead of speculation in the rendering of mutually interdependent special verdicts upon which the ultimate judgment is to be entered.").

112, 115, 152 A.2d 238, 240 (1959).[2] Moreover, dependent findings in juror deliberations can frequently be viewed as a refinement of the predicate findings, *accord O'Connell*, 569 N.E.2d at 897–98; therefore, it is neither illogical nor unjust that the extent of a juror's participation at later stages of deliberations might be impacted by his or her earlier findings.

Next, the majority references difficulties presented by the technique of bifurcation of liability and damages questions. *See* Majority Opinion at 238–40, 907 A.2d at 1095. The Court, however, has treated bifurcation short of severance as merely allowing for a "pause in the proceeding," in furtherance of prospects for settlements and cost savings. *See Stevenson v. GMC*, 513 Pa. 411, 420, 521 A.2d 413, 417–18 (1987). Findings in bifurcated proceedings are not final orders subject to appeal, and the trial court remains free to consider evidence adduced in the damages phase of a bifurcated trial in a post-trial assessment concerning liability. *See id.* at 420–22, 521 A.2d at 417–19.[3] Similarly, there is nothing in the reasoning

**2.** One judge further developed the point that, assuming full and fair deliberations, no juror is fully excluded at any point in the deliberative process as follows:

> Nor does the requirement of consistency between a juror's findings of negligence, proximate cause, and damages, on the one hand, and liability for those damages, on the other, necessarily require, as the majority suggests, that only those jurors *initially* finding each of the parties liable may deliberate upon the apportionment of that liability among them. While the logical progression would normally appear to be from findings of actionable negligence to apportionment of liability therefor, it is apparent that a juror may change her or his mind on one or more special verdicts at any time before the jury verdict is rendered. That factor alone would appear to refute the wisdom of imposing upon the deliberative process an artificial restriction barring each juror from fully considering and reconsidering each issue. As the majority implicitly acknowledges in its holding, a tentative vote is not cast in bronze; and so long as the ultimate product of a juror's deliberation is consistent, there is no reason to interfere with the process of "decisions and revisions which a minute [may] reverse."

*Juarez*, 183 Cal.Rptr. 852, 647 P.2d at 135–36 (Richardson, J., dissenting) (emphasis in original; citations omitted).

**3.** This is distinguished from severance, in which case a final order is entered in each of the separated proceedings. *See Stevenson*, 513 Pa. at 419–20, 521 A.2d at 417 (distinguishing bifurcation from severance).

supporting the permissive allowance of bifurcation in civil trials utilizing a single jury that suggests that the dynamics of the jury deliberations must be altered.[4]

Next, the majority suggests that requiring agreement among ten of twelve jurors increases the ability of counsel to intrude into juror deliberations. *See* Majority Opinion at 235, 907 A.2d at 1092 ("If we were to accept Appellees' position, and that of the Superior Court majority, the fortuitous fact that this verdict included special findings would permit counsel to delve into the otherwise sacrosanct jury deliberation process to ascertain disagreements among particular jurors or particular subparts of their discussions, whereas this would not be permitted if the verdict had been a general verdict without interrogatories."). However, I do not see why this is the case. In Pennsylvania, whether and to what extent a civil jury is polled is discretionary with the trial court, *see In re Estate of Dettra*, 415 Pa. 197, 205, 202 A.2d 827, 832 (1964), and post-trial inquiries into the propriety of jury verdicts are closely guarded by both competency-related evidentiary principles and ethical rules. *See Pratt v. St. Christopher's Hosp.*, 581 Pa. 524, 535–36, 540, 866 A.2d 313, 319–20, 323 (2005). Moreover, I do not regard concerns about the possibility that an improper verdict might be discovered as bearing greatly on the question of what is required to comprise a proper verdict in the first instance.

Finally, the majority highlights various efficiencies that it believes flow from the "any majority" rule that it endorses and suggests that a contrary approach would threaten the use of special interrogatories. *See* Majority Opinion at 238–40 & n.

---

4. It should also be noted that bifurcation is to be "carefully and cautiously applied" and utilized only upon a trial court's overall evaluation that the interests of justice are best advanced through the use the procedure. *Stevenson*, 513 Pa. at 422–23, 521 A.2d at 419 (quoting *Brown v. GMC*, 67 Wash.2d 278, 407 P.2d 461, 464 (Wash.1965)). Obviously, the potential impact upon jury deliberations in light of the circumstances of the case is a relevant consideration.

Moreover, to the extent that the technique of bifurcation short of severance would alter jury voting dynamics, our rules regulating trial procedure must obviously bend to constitutional commands such as those embodied in Article 1, Section 6; we do not adjust the constitutional interpretation to fit the procedural rules.

11, 907 A.2d at 1095–96 & n. 11. I agree that the "any majority" rule is the more efficient approach, as it allows for the rendering of verdicts upon a lesser degree of constancy in consensus. Therefore, this policy consideration is one that does militate, to some degree, in favor of its use.[5] In our system of civil justice, however, efficiencies are evaluated in connection with complete and fair adjudication of the rights and entitlements of the litigants. *See O'Connell,* 569 N.E.2d at 897 (expressing the view, in light of the diluting effect associated with tallying differing majorities garnered across any number of special interrogatories to arrive at a verdict, that the "any majority" rule represents a form of "substituting efficiency over substantive justice").

In this regard, I return to the theme that the weighing of these policies has been undertaken by the electorate and the General Assembly in Article 1, Section 6 and the enabling legislation, in which uncomplicated language was used to convey the idea that the number of jurors who must be in full agreement in a civil case was being reduced from twelve of twelve to ten of twelve. Again, this was, in and of itself, a substantial innovation furthering efficiency, and I differ with the majority's inference that further, substantial, and unstated innovations were intended by the simple and straightforward language that was presented to the electorate in accomplishing the amendment to Article 1, Section 6.

**5.** I disagree, however, that the maintenance of a "same juror" approach threatens the use of special interrogatories. *See* Majority Opinion at 238–39 n. 11, 907 A.2d at 1095 n. 11. In the first instance, I differ with the majority's suggestion that the mere fact that liability may be established in a tort case based on alternate theories is inherently confusing in terms of juror voting behavior. *See id.* Further, from my perspective, various difficulties attend the use of either the "any majority" or the "same juror" rule in complex civil litigation. *Cf. Juarez,* 183 Cal.Rptr. 852, 647 P.2d at 136 (Richardson, J., dissenting) ("[W]hile the adoption of a rule abandoning the necessity of consistency in a juror's special verdicts in this context may expedite such trials, it is not likely to be less confusing to the jury ... or more productive of justice. Rather, informing jurors ... that they must be consistent in attributing responsibility for the payment of damages to parties whom they find to be culpable would appear to have the dual virtues of simplicity and common sense, while effectuating the underlying principle of responsibility in proportion to fault.").

For the above reasons, I would affirm the order of the Superior Court. Accordingly, I respectfully dissent.