**Keith RAMER, Appellee**

v.

**Pamela L. RAMER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 13, 2006.

Filed Dec. 11, 2006.

---

**8.** Ravin raised this argument in its post trial motion, but the trial court did not address this point in its opinion.

Laurie E. West, Harrisburg, for appellant.

Emily L. Hoffman, Harrisburg, for appellee.

BEFORE: JOYCE, ORIE MELVIN, and JOHNSON, JJ.

OPINION PER CURIAM:

¶ 1 Pamela L. Ramer ("Mother") appeals the trial court's order granting primary physical custody of C.R. and M.R. ("the Children") to Keith Ramer ("Father"). In support of her appeal, Mother argues that the trial court erred when it failed to consider Father's criminal convictions, when it failed to appoint a qualified individual to evaluate and counsel Father and when it rested its decision upon offers of proof by counsel instead of testimony from witnesses. After careful review and study, we find that the trial court did not fulfill the requirements of 23 Pa.C.S. sections 5303(b) and (c) and, consequently, we vacate and remand the November 28, 2005 custody order for further proceedings consistent with this Opinion.

¶ 2 The trial court set forth the following factual background:

At the May 25 and November 28, 2005 custody hearings, [the trial court] heard testimony from both parents, [Father's] stepfather Cloyd (Butch) Keister, [Mother's] mother Carol Laudenslager, [Father's] girlfriend/fiancée Monique (Jewel) Hosler and psychologist Dr. Kasey Shienvold. The evidence presented was as follows: Prior to the parties' separation, they lived with their daughters in northern Dauphin County. Mother tes-

tified that during their relationship she primarily cared for the children since father worked either second or third shift and that he had limited involvement with the children. She claims to have been the primary disciplinarian and that he would routinely undermine her efforts. Father denied these allegations. Father also denied that mother primarily cared for the children, testifying that she would always sleep late in the mornings and stay up all night using the internet.

Mother, currently 26 years old and educated through ninth grade, alleged that prior to her separation, father abused her [ ]. She subsequently moved with the children, in early March 2005, to a Harrisburg shelter and then to a Lebanon County women's shelter. While at the Lebanon shelter, mother was required to take parenting classes. She was later asked to leave the shelter for either sleeping with her boyfriend Brian Conklin there or because she failed to attend the parenting classes.

At some point after mother was living in the shelter, father hired a constable to remove the children and deliver them to him. She reluctantly agreed with the understanding he would give the children back to her in a few days. He failed to do that, according to mother. Father claimed that although he did not have a court order, he resorted to this extreme measure because mother would not let him see or speak with the children and he was worried for their safety, believing she was acting as she had just prior to their split. At that time, he claimed that she was staying up all night on the internet and sleeping through mornings.

After leaving the shelter, mother moved in with Mr. Conklin for a short time. Father testified that while Mr. Conklin was living with mother, Mr. Conklin contacted him on numerous occasions to alert him about mother's inability to adequately supervise the children. After mother and Mr. Conklin broke up, mother moved in with Randy Light, a man she had known for only five or six weeks. She currently resides with Mr. Light in a rural Lebanon rental property. As of the first hearing, mother worked for her landlord, Mr. Light's uncle, doing painting and trim work in exchange for free rent. By the November hearing, mother had obtained employment as a cashier working thirty hours per week.

* * *

Mother's primary concern with father having custody is that father was previously convicted for sex offenses; on two occasions he conducted himself in an inappropriate sexual manner towards adult women. Mother also testified that while they lived together, father kept two or three sexually explicit tapes in their home. Mother is concerned that father might act sexually inappropriate towards their children, or might watch explicit tapes in [ ] their presence, although she made no such accusations that he had so acted during their relationship.

With regards to the tapes, father testified he has since disposed of all sexually explicit materials in his possession. With regard to his prior convictions, the record revealed that father first pled guilty in 1995 to indecent assault and indecent exposure. These convictions resulted when father, then twenty-six years old, exposed himself and touched the breast of an eighteen or nineteen year old woman. The victim babysat for one of father's children (from a previous relationship) and occurred while he was driving her home. Father claimed that

the woman asked whether he would like to touch her. He denied exposing himself or wanting to touch her but did so when she asked a second time. He claims he decided to plead guilty since he did not have money to pay an attorney for a trial and did not qualify for a public defender. Father was sentenced to 23 months probation on these charges. In 1998, father pled no contest to indecent exposure and open lewdness. These charges resulted when he exposed himself and masturbated from the front door of his home in view of a neighbor woman. Father denied masturbating and claimed that both he and his neighbor would often walk around naked in their homes and that she had exposed herself first. Father was again sentenced to 23 months probation and also directed to attend one year of group counseling for sexual offenders at T.W. Ponessa. The exit summaries made by Ponessa reveal that father made fair to good progress on numerous factors for which he was evaluated. Father otherwise completed the terms of his probation and has not been involved with the criminal justice system since his 1998 plea.

Dr. Kasey Shienvold, a clinical psychologist who evaluated father as required under the Domestic Relations Code, testified at the November hearing. Dr. Shienvold, who conducted one interview and two personality tests upon father, concluded in his psychological evaluation that father lacks awareness and insight into his emotional functioning and tends to act impulsively. Specifically, he testified that father "appears to struggle with sexual boundaries in his adult relationships" but noted that father's "inappropriateness was never reported to occur in front of or towards the children." Dr. Shienvold explained that someone who lacks awareness of emotional functioning has a tendency to display whatever emotion he is experiencing in an impulsive response. The condition revealed itself in the two sexual offenses father committed, whereby he responded with poor judgment to situations of a sexual nature, with adults.

Trial Court Opinion (T.C.O.), 03/03/2006, at 2–3, 8–9 (internal citations omitted).

¶ 3 Following the two hearings, the trial court ordered that both parties share legal custody of the Children and granted Father primary physical custody of the Children. Mother then filed her notice of appeal and the trial court ordered that Mother file a Pa.R.A.P.1925(b) Statement. Mother filed her 1925(b) Statement and the trial court entered its opinion.

¶ 4 Mother presents the following questions for our review:

A. DID THE LOWER COURT COMMIT AN ERROR OF LAW WHEN IT GRANTED CUSTODY OF THE MINOR CHILDREN TO THE FATHER IN CONTRAVENTION OF 23 Pa.C.S.A. § 5303(b), WHICH INCLUDES A MANDATORY PROVISION THAT THE COURT CONSIDER CRIMINAL CONVICTIONS OF FATHER AND DETERMINE IF FATHER POSED A THREAT OF HARM TO THE CHILDREN?

B. DID THE LOWER COURT COMMIT AN ERROR OF LAW WHEN IT FAILED TO APPOINT A QUALIFIED PROFESSIONAL TO EVALUATE AND COUNSEL FATHER AND PROVIDE TESTIMONY TO THE COURT REGARDING FATHER'S POTENTIAL THREAT OF HARM TO THE CHILD[R]EN?

C. DID THE LOWER COURT COMMIT AN ERROR OF LAW OR

ABUSE ITS DISCRETION WHEN IT RESTED ITS DECISION ON OFFERS OF PROOF FROM COUNSEL?

Brief for Appellant at 11.

██ ¶ 5 Preliminarily, we note that the trial court has broad discretion in issues relating to child custody. Indeed, [o]nly where it finds that the custody order is manifestly unreasonable as shown by the evidence of record will an appellate court interfere with the trial court's determination. Therefore, unless the trial court's ruling represents a gross abuse of discretion, an appellate court will not interfere with its order awarding custody.

*Swope v. Swope*, 455 Pa.Super. 587, 689 A.2d 264, 265 (1997) (internal ellipses and quotation marks omitted).

¶ 6 In support of her first question, Mother argues that the trial court erred because it failed to consider Father's criminal convictions and determine if Father was a potential threat to the Children. Brief for Appellant at 20, 22. Preliminarily, we note that it appears that Mother is appealing the trial court's Interim Order dated May 26, 2005, which awarded joint legal custody to Mother and Father and awarded primary physical custody to Father. Brief for Appellant at 22, 28. Specifically, Mother argues that the trial court erred in the Interim Order because it failed to satisfy the requirements of 23 Pa.C.S. section 5303. Brief for Appellant at 28. Mother further argues that even if the trial court heard the testimony from Dr. Shienvold and reviewed the notes from T.W. Ponessa, it still did not satisfy the standard under section 5303. Brief for Appellant at 28.

██ ¶ 7 Mother's argument that the trial court erred when it entered the Interim Order awarding Father primary custody is moot. "An issue before a [reviewing] court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." *Johnson v. Martofel*, 797 A.2d 943, 946 (Pa.Super.2002). The appellate courts of the Commonwealth of Pennsylvania will not decide moot questions. *See, e.g., Commonwealth v. Dorler*, 403 Pa.Super. 150, 588 A.2d 525, 526 (1991). Even if we were to find that the trial court erred in its May 26, 2005 Order, because it failed to take the testimony Mother alleges is required by section 5303, there is no relief that we could grant Mother on that basis. The trial court conducted an investigation and set forth a final order in November of 2005. As such, any decision from this Court regarding the propriety of the trial court's May 2005 Interim Order would have no effect. Thus, Mother's first question, and the arguments in support thereof, do not require that we reverse or vacate the trial court's Interim Order as it is moot.

¶ 8 In support of her second question, Mother argues that the trial court committed an error of law when it failed to appoint a qualified professional to evaluate and counsel Father regarding his potential threat of harm to the Children as required by 23 Pa.C.S. sections 5303(b) and (c). Brief for Appellant at 29. The statute at issue, section 5303, requires a trial court to consider the criminal conduct of any parent convicted of a statutorily enumerated offense "before making an order of custody, partial custody or visitation to that parent[.]" 23 Pa.C.S. § 5303(b). Father pled guilty to, *inter alia,* indecent assault and indecent exposure, both of which are among the enumerated crimes under section 5303(b). *See* 23 Pa.C.S. §§ 5303(b)(9), (b)(10). The charges arose from two incidents which occurred in 1995 and 1998. Section 5303(c) applies if a parent seeking custody or visitation has been convicted of an enumerated list of crimes and requires

that the trial court evaluate whether the parent poses a risk of harm to the child. Section 5303(c) states the following:

> **(c) Counseling.**—In making a determination to award custody, partial custody or visitation pursuant to subsection (b), the court shall appoint a qualified professional to provide counseling to an offending parent described in subsection (b) and shall take testimony from that professional regarding the provision of such counseling prior to issuing any order of custody, partial custody or visitation. Counseling, required in accordance with this subsection, shall include a program of treatment or individual therapy designed to rehabilitate a parent which addresses, but is not limited to, issues regarding physical and sexual abuse, domestic violence, the psychology of the offender and the effects of abuse on the victim. If the court awards custody, partial custody or visitation to an offending parent described in subsection (b), the court may require subsequent periodic counseling and reports on the rehabilitation of the offending parent and the well-being of the child following an order relating to custody, partial custody or visitation. If, upon review of a subsequent report or reports, the court determines that the offending parent poses a threat of harm to the child, the court may schedule a hearing and modify the order of custody or visitation to protect the well-being of the child.

23 Pa.C.S. § 5303(c).

▓ ¶ 9 The meaning of section 5303(c), which presents an issue of first impression for this Court, is made plain by the statutory language. *See Fritz v. Wright*, 589 Pa. 219, 231, 907 A.2d 1083, 1090 (2006) (stating that statutes are to be interpreted in accordance with their plain language). It requires the trial court to appoint a "qualified professional" who shall then counsel the "offending parent." 23 Pa.C.S. § 5303(c). While the modifier "qualified" is not defined in the statute, it becomes superfluous if not read to require the professional to have expertise tied to the particular offense under assessment. *See Commonwealth v. Lassiter*, 554 Pa. 586, 722 A.2d 657, 661 (1998) (rejecting statutory interpretation that would render a word superfluous because such would conflict with the "axiom of statutory construction that whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage.") (citation omitted). Realistically, whether the offending parent poses a threat of harm to the child cannot be assessed adequately without an understanding of that parent's particular criminal conduct and the nature of the offense. Our laws recognize that sexual offenders in particular often present with unique mental health issues. *See, e.g.*, 42 Pa.C.S. § 9795.4 (requiring expert assessment of offenders who commit specified sexual offenses). Obviously, these same issues can gravely impact the best interests of a child in a custody setting. By requiring the trial court to "appoint" the qualified professional, the statute attempts to ensure that the court will receive the kind of information necessary to assess whether the offending parent, with his or her unique criminal conviction history, poses a threat of harm to the child. Section 5303(c) also plainly requires the trial court to hear testimony from the qualified professional regarding the course of counseling provided to the offending parent following the court appointment.

¶ 10 The underlying purpose of the procedure established by section 5303 is readily apparent. Once appointed, the qualified professional must assess and counsel the offending parent and provide testimony regarding the same to aid the trial court in its determination under section 5303(b). The plain language of the statute reveals

the obvious intent of the Legislature to ensure that custody is not being provided to a parent whose past criminal behavior presents a present threat of harm to the child. *See Fritz*, 907 A.2d at 1090. The statute requires a sensitive inquiry aided by a professional whose qualifications allow him or her to assess the offending parent in light of the particular criminal conduct that has triggered the inquiry.

¶ 11 In this case, the trial court did not comply with the statutory directive to "appoint" a qualified professional. Instead, the certified record suggests that the trial court simply directed the parties to each obtain a mental health evaluation. This does not comply with the letter or the spirit of section 5303.

¶ 12 Even if Dr. Shienvold had been appointed by the trial court, we would not conclude that he was a "qualified professional" within the meaning of section 5303(c) or that he provided the "counseling" mandated by the statute. Dr. Shienvold, who is a licensed psychologist, readily acknowledged at the November 28, 2005 hearing that he had "no specific or specialized training" in evaluating sex offenders, that the only relevant training he had was attendance at a symposium on child custody evaluation at which a presentation was made on how sexual abuse can impact a custody evaluation, and that he was unfamiliar with the "variables and standards for sex offenders specifically." Notes of Testimony ("N.T."), 11/28/05, at 10–12. While he possessed experience with custody evaluations, Dr. Shienvold twice reiterated that he was "brought in simply to do the mental health evaluation." *See id.* at 21, *see also id.* at 24. The inquiry required by section 5303(b) cannot be conducted properly without the aid of a professional specifically trained to assess and counsel sex offenders.

¶ 13 Further, even if Dr. Shienvold could be considered a "qualified professional," the one-time evaluation he performed appears to have addressed only the psychology of the offender; it did not otherwise meet the description of "counseling" provided in section 5303(c). *See* Certified Record ("C.R.") 20 (Respondent's Exhibit 1 (referring to the Minnesota Multiphasic Personality Inventory and the State–Trait Anger Expression Inventory administered to Father)). Dr. Shienvold expressly stated in his report that Father would benefit from additional brief therapy. *See id.* He also testified that he was not then providing any counseling or therapy to Father, *see* N.T., 11/28/05, at 21 (testifying, "No, I am sure not. I was brought in simply to do the mental health evaluation.") and that, because he was "under the impression that this was simply a mental health evaluation," he did not administer any of the other tests typically administered in a custody evaluation. *Id.* at 22–24.

¶ 14 Although we recognize that Dr. Shienvold's report concludes that Father "appears to struggle with sexual boundaries in his adult relationships" and "would benefit from brief psychotherapy designed to help him learn more appropriate ways of expressing himself in adult relationships," C.R. 20 (Respondent's Exhibit 1), this focus on Father's adult relationships, while relevant, is not dispositive of the statutory inquiry. Dr. Shienvold's report contains only one statement regarding the children: "It should be noted that [Father's] inappropriateness was never reported to occur in front of or towards the children." *Id.* Simply stated, we are unable to find that Dr. Shienvold's report or testimony support the trial court's summation that "Dr. Shienvold's testimony was that [F]ather's past behavior, which occurred over eight years ago, is not a cur-

rent threat to his children[.]" T.C.O., 3/3/06, at 11.

¶ 15 Finally, we cannot conclude that the notes of counseling from Father's therapy sessions at T.W. Ponessa in 2000 satisfied the counseling requirement of section 5303(c) or were otherwise sufficient to provide the trial court with the information needed to assess whether he posed a present threat of harm to the children. While the notes attested to Father's successful completion of sexual offender counseling in 2000, the statute requires counseling to the offending parent in the present, i.e., at the time custody is under assessment. Notes of counseling from 2000 have only limited value in assessing a threat of harm to the children in 2005. Additionally, to the extent the trial court notes the absence of evidence that a parent poses a threat to the child, this is an improper reading of the rule, which imposes an affirmative duty to determine that the parent "does not pose a threat of harm to the child." 23 Pa.C.S. § 5303(b). This is to be accomplished through the appointment of a qualified professional, the provision of counseling to the offending parent in the present, and the taking of testimony from the qualified professional regarding the same. Such did not occur here, and, thus, we vacate the custody order and remand with instructions to comply with the plain language of 23 Pa. C.S. sections 5303(b) and (c).

¶ 16 Finally, we note that in support of her third question, Mother argues that the trial court erred when it rested its decision on offers of proof from counsel. Brief for Appellant at 35. We will not reach the merits of this argument because Mother failed to raise that issue in her Rule 1925(b) Statement. It is well established that any issues not raised in the Rule 1925(b) Statement are waived for purposes of appeal. *See, e.g., Common-*

*wealth v. Castillo,* 585 Pa. 395, 888 A.2d 775, 780 (2005) (reaffirming the bright-line rule of waiver and stating that "in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P.1925. Any issues not raised in a Pa.R.A.P.1925(b) statement will be deemed waived.") (citation omitted); *Giles v. Douglass,* 747 A.2d 1236, 1237 (Pa.Super.2000) (finding that Father waived appeal in custody case when he failed to file a Rule 1925(b) Statement).

¶ 17 For all the foregoing reasons,

¶ 18 The trial court's Order is **VACATED** and **REMANDED** with instructions to comply with the plain language of 23 Pa. C.S. sections 5303(b) and (c).