J-A32033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: K.C., A MINOR

APPEAL OF: K.C., FATHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1579 EDA 2016

Appeal from the Order April 7, 2016
in the Court of Common Pleas of Bucks County
Domestic Relations at No.: CP-09-DP-0000019-2014

BEFORE: DUBOW, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:          **Filed January 17, 2017**

K.C. (Father) appeals[1] from the trial court's order changing the permanency goal of K.C. (Child) from reunification to adoption. We affirm on the basis of the trial court's opinion.

In its June 2, 2016 opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. (*See* Trial Court

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Father filed a timely notice of appeal and statement of errors complained of on appeal on May 3, 2016. *See* Pa.R.A.P. 1925(a)(2)(1), (b). The trial court filed an opinion on June 2, 2016. *See* Pa.R.A.P. 1925(a)(2)(ii).

Opinion, 6/02/16, at 1-4).[2] Therefore, we have no reason to restate them here.

As a preliminary matter, we observe that, in the argument section of his brief, Father maintains for the first time that, because "[t]he statutory construction of 42 Pa.C.S.[A.] § 6351(e)(1) only permits that there be a permanency goal as to the child and not to the parents or guardian[,]" "[t]he [trial] court abused its discretion by bifurcating the Child's goal between the Child's parents instead of maintaining a singular goal as to the Child[.]" (Father's Brief, at 9, 10). Because he did not raise this allegation in his statement of questions involved or statement of errors complained of on appeal, this claim is waived.

> It is well established that any issues not raised in the Rule 1925(b) Statement are waived for purposes of appeal. *See, e.g., Commonwealth v. Castillo*, [] 888 A.2d 775, 780 ([Pa.] 2005) (reaffirming the bright-line rule of waiver and stating that "in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P.1925. Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived.") (citation omitted); *Giles v. Douglass*, 747 A.2d 1236, 1237 (Pa. Super. 2000) (finding that Father waived appeal in custody case when he failed to file a Rule 1925(b) Statement).

---

[2] We have redacted the copy of the trial court's June 2, 2016 opinion attached to this decision to remove the name of the Child involved in this case and any other identifying information. *See* Superior Court I.O.P. 424A (providing that Superior Court decisions related to custody proceedings shall not contain the names of minors or identifying information of any other individuals involved).

*Ramer v. Ramer*, 914 A.2d 894, 902 (Pa. Super. 2006) (finding one of mother's issues waived for failing to include it in Rule 1925(b) statement); *see also* Pa.R.A.P. 1925(b)(4)(vii). Also, pursuant to Pennsylvania Rule of Appellate Procedure 2116(a), "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a).

In this case, Father raises one issue in both his Rule 1925(b) statement and statement of questions involved: "[t]he [t]rial [c]ourt abused its discretion and/or erred as a matter of law and fact by granting the request to change the permanency goal from reunification to adoption." (Father's Rule 1925(b) Statement, 5/03/16; *see also* Father's Brief, at 4). Therefore, Father's issue, that the court abused its discretion because it was statutorily precluded from ordering a different goal for each parent with respect to Child, is waived. *See Ramer, supra* at 902; *see also* Pa.R.A.P. 1925(b)(4)(vii), 2116(a).

Moreover, even if this issue were not waived, it would not merit relief. We review a trial court's goal change decision for an abuse of discretion. *See In re R.M.G.*, 997 A.2d 339, 345 (Pa. Super. 2010). Pertinent to our review of this issue, the court commits an abuse of discretion if it misapplies the law. *See id.*

In this case, Father relies on the language of 42 Pa.C.S.A. § 6351(e)(1) and Rule of Juvenile Procedure 1608(A) in support of his

argument that "[t]he [trial] court abused its discretion by changing the goal to adoption for Father only [because] there is only a permanency goal for the subject [C]hild and not for the parents or guardian." (Father's Brief, at 10; *see id.* at 10-14). Father's claim would lack merit.

> [I]n evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law. Further, [w]hen interpreting a statute, we must abide by the rules of statutory construction. It is a basic tenet of statutory interpretation that, when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

*Faust v. Walker*, 945 A.2d 212, 213 (Pa. Super. 2008) (citations and quotation marks omitted).

Section 6351(e)(1) provides, in pertinent part:

> The court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan, including the child's desired permanency goal, in a manner appropriate to the child's age and maturity. . . .

42 Pa.C.S.A. § 6351(e)(1).

Rule 1608(A) states:

> **A. Purpose and timing of hearing.** For every case, the court shall conduct a permanency hearing at least every six months for purposes of determining or reviewing:
>
>> (1) the permanency plan of the child;

- 4 -

(2) the date by which the goal of permanency for the child might be achieved; and

(3) whether the placement continues to be best suited to the safety, protection, and physical, mental, and moral welfare of the child.

Pa.Juv.Ct.R. 1608(A)(1)-(3).

We discern nothing in the above language that precludes a trial court from finding that a permanency plan containing different goals for each parent is "best suited to the safety, protection, and physical, mental, and moral welfare of the [C]hild." *Id.* at (A)(3). Indeed, Father fails to identify any precedent that supports his position, (**see** Father's Brief, at 10-14), and we are not aware of any. Further, we will not "disregard[ the clear and unambiguous language of the statutes] under the pretext of pursuing [Father's interpretation of their] spirit." *Faust*, *supra* at 213 (citation and internal quotation marks omitted). Hence, we conclude that the trial court properly exercised its discretion in applying the law and in finding it was in Child's best interest to designate different permanency plans for each parent. *See R.M.G.*, *supra* at 345. Father's claim, even if not waived, would not merit relief.

We now turn to the only issue properly before us: "Whether the [t]rial [c]ourt abused its discretion and/or erred as a matter of law and fact by changing the permanency goal from reunification to adoption for Father?" (Father's Brief, at 4). In support of this claim, Father maintains that the trial court abused its discretion in changing Child's permanent placement goal as

to him, to adoption. (**See** Father's Brief, at 4, 14-19). After a thorough review of the record, the briefs of the parties, and the well-reasoned opinion of the trial court, we conclude that there is no merit to Father's claim. The trial court opinion properly disposes of the question presented. (**See** Trial Ct. Op., at 5-12 (finding that: (1) it is necessary for Child to remain in care of Bucks County Children & Youth Agency (Agency) because both parents have been incarcerated since her birth; (2) the Child cannot wait indefinitely, without any sense of permanency, while Father tries to become fit for reentry into society at some unknown future date; (3) the court will be able to approve adoption providing a stable and nurturing environment for Child well before an unidentified future date when Father might be released from confinement and he acquires necessary skills to care for her; (4) Agency has made reasonable efforts for reunification of Father and Child; (5) although Father has made some progress under parenting plan, he will remain incarcerated indefinitely and unable to care for Child; (6) Child has been under care and supervision of Agency longer than proscribed fifteen out of last twenty-two months)). Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/17/2017</u>

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
JUVENILE COURT DIVISION**

IN THE INTEREST OF:            :       No.:   CP-09-DP19-2014
                              :
████████ (12██-13)            :       Children's Fast Track Appeal
                              :

### OPINION

████████, Appellant and Father, appeals from this Court's Order dated April 6, 2016, changing ████████'s permanent placement goal to adoption with respect to Father. Appellant filed this children's fast track appeal on May 4, 2016, pursuant to Pa.R.A.P. 904(f). The Court files this opinion in accordance with Pa.R.A.P. 1925(a).

### STATEMENT OF FACTS

The Bucks County Children and Youth Agency ("Agency") filed for a change in goals in this matter on or around February 8, 2016. The hearing was held on Friday, March 4, 2016. The parents ████████, were present by video and both were represented by counsel. The Agency and the child ████████ were also both represented by counsel.

In general, the evidence at the hearing established that ████████ was born on December ██, 2013, and for all practical purposes, the parents, from either criminal case troubles and/or significant substance abuse issues, have never been in a position to care for the child on a daily basis. ████████ has been in the custody of the Agency since birth, with a few different placements along the way.

Father is currently serving multiple criminal sentences of incarceration at least some of which appear to be running concurrently with each other. (See CP-09-CR-0004715-2014, 0002184-2014, 0004300-2014.) Father was sentenced on September 29, 2014, for a burglary



matter, for which a one year minimum sentence was imposed. (CP-09-CR-0004715-2014.) He was also sentence on September 29, 2014, for forgery, in which another one year minimum sentence was imposed. (CP-09-CR-0002184-2014.) The last sentence from Bucks County is for a crime in which Father essentially plead guilty (along with Mother) to arranging for drugs (contraband) to be brought into the Bucks County Correctional Facility. (CP-09-CR-0004300-2014.) The docket reflects that he plead guilty on September 29, 2014, and was sentenced to serve not less than four years nor more than ten years in a State Correctional Institution. Id.

Father indicated that he has filed a Post-Conviction Relief Act ("PCRA") petition for this last sentence.[1] Based upon a review of the docket entries, indicating that the initiation date for the case was March 24, 2014, and that the case was filed on July 23, 2014, it appear that Father's earliest possible release date (assuming he is unsuccessful in his appeal) is March of 2018. Father repeatedly suggested that his minimum sentence would be served by September of 2016, but given the four year minimum, it is incomprehensible that Father could be released any earlier than March of 2018, despite his apparent unwillingness to accept that reality.

Mother too is serving a sentence for conspiring to bring contraband (drugs) into the Bucks County Correctional Facility. Interestingly, and of no small concern to this Court, Mother appears to have been approximately five months pregnant with the subject child at the time she and Father engaged in their conspiratorial criminal conduct. While there was some dispute about exactly how far along Mother was in her pregnancy, there is no dispute that both Father and Mother "knew" she was pregnant with ███████ at the time of the conspiratorial criminal conduct of bringing contraband (drugs) into the Bucks County prison.

---

[1] The docket reflects that the petition was filed on April 8, 2015, and has yet to be resolved. (CP-09-CR-0004300-2014.)

2

The Court at the hearing found that there were examples of Mother and Father and their respective efforts to stay in contact with their son, to be involved, to have him visit them in prison, and there was evidence of their purported efforts to become more productive citizens and potentially obtain improved parenting skills based on their involvement with a number of programs in prison. However, the Court concluded that, while Father has established some bond with ███████ that Father has had significant judgment issues in the past (soliciting the mother of his child to "smuggle" drugs into the prison while she was pregnant with this child), resulting in Father and Mother being incarcerated for much or all of the child's life, and Father will likely be incarcerated for at least an additional two years.

In addition, Father's conduct and demeanor during the hearing, even on video, were of an angry, impatient, individual. He was agitated throughout and while his purported efforts at self-discovery and a better understanding of his failings as a person were commendable, this Court has no confidence that Father would be an acceptable parent at any point in the foreseeable future, even if his release were scheduled earlier. Father's stubbornness, under oath, to acknowledge the practical reality of his sentence and that his own paperwork suggesting a parole in September of 2016 is not on the Bucks County Sentence, among other things, caused this Court great concern that Father was not being candid and that he is a non-compromising individual. Quite frankly Father's testimony and suggestions were almost exclusively about him, and what the goal change would mean to him, and how unfair this was potentially to him, while offering no realistic solution to this matter and did not present any significant evidence of what was in the best interests of the child.

Therefore, based on the reality of Father's situation, the Court could not find that it was in the best interests of this child to continue to have his life put on hold, especially for such an

additional extended period of time. Instead, the Court found that establishing some degree of permanency in the child's life was of paramount importance. Accordingly, the Court accepted and approved the Agency's request to change the goal in Father's case to adoption.

In contrast, the Court denied the Agency's request to change the goal to adoption in Mother's case. Unlike Father, Mother had the possibility of being released in approximately six weeks following the hearing. The Court considered the possibility that Mother may be just a few weeks away from being in a position to make major strides in her permanency plan and there was some chance that within months, she might be in a position to begin to structure her life in such a way that reunification might still be a possibility. Given that we were so close to this possibility, and that reunification is favored under Pennsylvania Dependency Law, this Court found that it was in the child's best interests to at least allow for the possibility of reunification of this child with Mother.[2]

Father now appeals the Court's Order dated April 6, 2016, changing ~~Kameryn Colello's~~ permanent placement goal to adoption with respect to him.

### STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

On May 3, 2016, Appellant submitted a Concise Statement of Errors Complained of on Appeal, raising the following for review:

---

[2] The Court emphasized that it had substantial concerns about Mother's ability to parent this child and accordingly made the following specific finding in its Decision and Order dated April 6, 2016:

Should Mother falter, in any manner, in her efforts toward parole, or her efforts to remain sober and clean, or to meet reasonable and targeted requests of the agency, or if any possibility of permanency with this child and mother is going to be delayed for any significant period of time, this Court will allow the agency to re-file a request for a goal change, at any time, upon Petition. Accordingly, the agency's request to seek a goal change with regard to mother is denied at this time. However, said denial is without prejudice to the agency's right to request this goal change again, and to use the evidence offered in this proceeding as well as any new evidence to attempt to convince this Court at some future date to revisit the goal change issue for mother.

4

1.  The Trial Court abused its discretion and/or erred as a matter of law and fact by granting the request to change the permanency goal from reunification to adoption.

## DISCUSSION

The Court did not abuse its discretion in granting the Agency's request to change the permanency goal from reunification to adoption in Father's case. "On appeal, goal change decisions are subject to an abuse of discretion standard of review." In re R.M.G., 997 A.2d 339, 345 (Pa. Super. Ct. 2010) (citing In re N.C., 909 A.2d 818, 822 (Pa. Super. Ct. 2006)).

> In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was "manifestly unreasonable," that the court did not apply the law, or that the court's action was "a result of partiality, prejudice, bias or ill will," as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witness and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm, "even if the record could also support an opposite result."

Id. (quoting In re N.C., 909 A.2d at 822-23).

Also, "[t]he Juvenile Act controls the disposition of dependent children." Id. at 345. The Act states that, as a general rule, "if the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child[.]"42 Pa.C.S. § 6351(a). "[I]n a change of goal proceeding, the trial court must focus on the child and determine the goal in accordance with the child's best interests and not those of his or her parents." In re C.J.R., 782 A.2d 568, 569 (Pa. Super. Ct. 2001). "Although the agency has the burden to show a goal change would serve the child's best interests, **'safety, permanency, and well-being of the child must take precedence**

5

**over all other considerations' under Section 6351.**" In re R.M.G., 997 A.2d at 347 (emphasis added and citations omitted).

Under 42 Pa.C.S. § 6351(f), the Act states that the Court shall, at each permanency hearing, determine the following factors when deciding whether to change the goal from reunification to adoption:[3]

> (1) The continuing necessity for and appropriateness of the placement.
> (2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
> (3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.
> (4) The appropriateness and feasibility of the current placement goal for the child.
> (5) The likely date by which the placement goal for the child might be achieved.
> (5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.
>
> \*\*\*
>
> (9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:
> (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;
> (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

---

[3] The Court heard no evidence with regards to factor (6) nor has any reason to believe that ▓▓▓▓ will not be safe under the care and supervision of the Agency. In fact, the Agency has superior ability and resources to be able to provide for ▓▓▓▓ because of Father's continual incarceration.

The Court finds that factors (7) through (8.2) do not apply as they deal with children placed outside of the Commonwealth and for children over the age of fourteen.

The Court also finds that factors (10) through (12) do not apply. The minor child in this case does not have any sibling. Moreover, the Court heard no evidence with regards to factor (12) and therefore the Court has no reason to find that the child has not been provided with regular, ongoing opportunities to participate in age-appropriate or developmentally appropriate activities under the care and supervision of the Agency.

6

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

Based on the facts and circumstances surrounding this case, this Court did not abuse its discretion by changing the goal to adoption with respect to Father.[4] Sections 6351(f)(1)-(5) all weigh heavily against Father. Under factor (1), the Court has no choice but to place ▓▓▓▓ ▓▓▓▓ under the care and supervision of the Agency given the fact that Father has been and will remain incarcerated for at least an additional two more years. In fact, both parents have been incarcerated since the minor child's birth and have not been in the position to be able to care for the needs of ▓▓▓▓ Therefore, it continues to be absolutely necessary and appropriate for ▓▓▓▓ to be placed under the care of the Agency.

Under factors (2) and (4), the permanency plan developed and the current placement goal for ▓▓▓▓ are wholly appropriate and feasible. The fact is that Father continues to be incarcerated and absent success on his appeal, he will remain in prison for at least two more years, assuming he is released at his minimum. An assumption that father will even be released on his minimum, and available to accept responsibility for the child, is not an assumption this Court is not prepared to make, when considering the child's best interests. ▓▓▓▓ would be more than four years old by the time Father could potentially be released from prison, at the earliest. Once out of prison, Father would almost certainly need additional time to adjust back into society, perhaps to remain at a halfway house for a period of time, find a stable job, and learn the skills necessary to care for ▓▓▓▓. In the meantime, the Court has no choice but to keep the Agency involved to care for ▓▓▓▓ and to change the goal to adoption with respect

---

[4] Moreover, this Court has the authority to change the goal to adoption with respect to Father only, and not Mother. See In re Burns, 379 A.2d 535, 541 (Pa. 1977) (holding that courts can terminate just one parent's parental rights without determining the other parent's rights).

7

to Father. ████████ cannot wait for years on end until Father finally gets his act together and become fit for reentry into society without any sense of permanency. By changing ████████ permanency goal to adoption moves the case one step closer to being able to provide a stable environment for ████████ to develop and grow. The Court will address the extent of Father's compliance with the Agency's permanency plan later on in this opinion.

Moreover, Father has not and will not be able to address the concerns outlined under factor (3). Father has made no progress under this factor because he continues to be incarcerated, necessitating the Agency's intervention and care for ████████ in the first place.

Factor (5) also supports this Court's decision. If the Agency decides to move forward with adoption, and the Court approves the adoption at a later date, ████████ would be provided the stable and nurturing environment sooner than any date Father would realistically be released from confinement and until when Father acquires the skills and assets necessary to take care of ████████

With respect factor (5.1), whether reasonable efforts were made to finalize the permanency plan in effect, the Court believes that the Agency has in fact made reasonable efforts. For example, the Agency has worked with Father to have ████████ visit him in prison. It is not the Agency's fault that Father has been and will remain incarcerated. The reason for Father's incarceration is solely his fault and as the consequence of his criminal conduct.

Furthermore, factor (9) supports the Court's goal change decision. ████████ has been under the care and supervision of the Agency since his birth on December 29, 2013, longer than the proscribed 15 out of the last 22 months requirement.

Following up to the Court's findings under factor (2), the Court believed that Father has made some attempts to meet the Agency's permanency plan. For example, he has stayed in

8

contact with the parties' child and ▓▓▓▓ has visited him while in prison. Father has also been involved with different programs while in prison in attempt to become a better parent. However, while the Court concluded that Father has established some bond with ▓▓▓▓ Father has had significant judgment issues in the past. The Court cannot ignore the fact that Father conspired with Mother to smuggle drugs (contraband) into the Bucks County prison while Mother was five months pregnant with ▓▓▓▓ The Court further found that Father knew when he conspired with Mother, that she was pregnant with ▓▓▓▓. More importantly, Father, as a direct result of his attempt to have drugs smuggled into the prison, using the mother of his expectant child to accomplish this goal, has been incarcerated for much or all of the child's life and will likely be incarcerated for at least an additional two years and upwards of eight additional years.

"Because the focus is on the child's best interests, a goal change to adoption might be appropriate, even when a parent substantially complies with a reunification plan." In re R.M.G., 997 A.2d at 347 (holding that a parent's rights are secondary in a goal change proceeding). Regardless of whether a parent has complied with the permanency plan, a goal change to adoption might be appropriate where a parent's skills, including her judgment with regard to the emotional well-being of his or her children, remain problematic. Id. (citing In re N.C., 909 A.2d at 825).

Even in situations where a parent, such as Father, has complied with some of the Agency's permanency plan, the Court can, by giving priority to the child's safety and stability, change the goal from reunification to adoption. See also In re S.B., 943 A.2d 973, 981 (Pa. Super. Ct. 2008) (affirming the decision to change the goal to adoption despite parents' substantial compliance with the permanency plan because the child had been with the foster parents for over four years and a goal change would be beneficial to the child's emotional

9

stability needs). "If a parent cannot or will not meet her irreducible minimum parental responsibilities, the needs of the child must prevail over the rights of the parent." In re A.P., 728 A.2d 375, 379 (Pa. Super. Ct. 1999) (holding that a parent, whether disabled or not, must be able to meet the irreducible minimum parental requirements contained in the Juvenile Act for return of a child in CYS's care). "The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa. Super. Ct. 2006). This is based on the policy that "a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." Id.

Here, the Court found that it was in the best interest of ▓▓▓▓ to change the goal from reunification to adoption with respect to Father. He was sentenced to a four year minimum on September 29, 2014, with an upwards sentence of ten years. The fact remains that Father will remain incarcerated for the foreseeable future, with a minimum of at least two more years, and will not be in a position to take care of ▓▓▓▓. While Father has indicated that he has filed a PCRA petition, as the Superior Court has stated, this Court cannot and will not continue to subordinate indefinitely the ▓▓▓▓ need for permanence and stability to Father's claims of progress and hope for the future.

The Superior Court has further held previously that the trial court did not abuse its discretion by changing the goal to adoption where father was currently incarcerated. In re A.K., 936 A.2d 528, 534-35 (Pa. Super. Ct. 2007) ("The court also noted that Father would be in prison for at least two more years and possibly as many as nine more years."). In that case, the trial court properly changed the goal for the dependent children from reunification to adoption at the hearing, despite the fact that father had made substantial progress toward his permanency plan

10

prior to his incarceration. Id. That court explained that despite father's progress, the simple fact was that he was presently incarcerated and would remain so for another year, and thus the progress father made on his permanency plan prior to his incarceration had to be measured against the reality of his present circumstance, which was that father was unable to provide for any of the needs of his children with regard to housing, other basic necessities, and day-to-day love, emotional support and guidance. Id. Also, the father there had been incarcerated since prior to the child's birth. Id. at 831. The trial court did not abuse its discretion in granting CYS's petition to terminate where it based its decision on the uncertainty of the father's parole date and that, even upon parole, the father would reside in a half-way house and would need to obtain housing, employment and transportation in addition to parenting skills. Id.

Here, ▮▮▮▮▮▮ case is similar to In re A.K., 936 A.2d 528. Father was incarcerated prior to ▮▮▮▮▮▮ birth and has never provided him with essential parental care. The practical effect of Father's incarceration is that he has not been able to provide for the needs of ▮▮▮▮▮▮ with regard to housing, other basic necessities, and day-to-day love, emotional support and guidance. Even assuming Father will be paroled on his minimum in two years and will be successful upon re-entry into the community, it will be some time before Father can obtain suitable housing, employment and transportation, in addition to parenting skills necessary to be able to take care of ▮Kameryn▮ upon his release.

In summary, the reality is that ▮▮▮▮▮▮ will have to remain under the Agency's care and supervision, at least until either Mother or Father is released from custody. While Father has made some progress under the Agency's plan, the fact is that he will remain in custody and will be unable to provide for ▮▮▮▮▮▮. It is not feasible for ▮▮▮▮▮▮ to have to wait in limbo, without any sense of permanency and stability, until Father is released from custody. Moreover,

11

the Court has serious reservation as to when Father will actually be released, given the scenario of his prior criminal conduct and his decision to conspire with Mother to smuggle illegal substances into the prison, all the while knowing that she was pregnant with ███ at the time.

## CONCLUSION

Based on the Court's determinations under Section 6351, this Court did not abuse its discretion by finding that it was in the best interest to change the goal to adoption with respect to Father.

BY THE COURT:

DATE: _June 27 2016_

BRIAN T. McGUFFIN, J.