**[J-39-2024] [OAJC: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 109 MAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 84 EDA 2022 |
| | : | dated January 9, 2023, Reargument |
| v. | : | denied March 17, 2023, Affirming |
| | : | the Judgment of Sentence of the |
| | : | Delaware County Court of Common |
| RASHEED MUHAMMAD, | : | Pleas, Criminal Division, at No. CP- |
| | : | 23-CR-0001435-2019 entered |
| Appellant | : | November 30, 2021. |
| | : | |
| | : | ARGUED: May 14, 2024 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE WECHT**                                          **DECIDED: May 30, 2025**

A jury may render inconsistent verdicts in a criminal case.[1]  When a jury does so, judicial review of any disputed conviction proceeds as a challenge to the sufficiency of the evidence.[2]  An acquittal on one count that is inconsistent with a conviction on another count is not to be read as a specific finding of fact.[3]  In this case, we accepted review in order to resolve the question of how to apply these principles when a conviction is at odds with the answer to a special interrogatory.  The Opinion Announcing the Judgment of the Court ("OAJC") avoids this question altogether.  It does so by holding, as a threshold

---

[1]     *See, e.g., Commonwealth v. Carter*, 282 A.2d 375, 376 (Pa. 1971); *Commonwealth v. Mills*, 1850 WL 5804, at *2 (Pa. 1850).

[2]     *Commonwealth v. Miller*, 35 A.3d 1206, 1208 (Pa. 2012).

[3]     *See Carter*, 282 A.2d at 376; *United States v. Powell*, 469 U.S. 57, 67 (1984) (explaining that sufficiency review on one count "should be independent of the jury's determination that evidence on another count was insufficient").  Together, I'll refer to these basic principles as the inconsistent verdicts doctrine.

matter, that the conviction and the special interrogatory answer are not inconsistent.[4] This conclusion conflicts with our precedent. Because the special interrogatory and the conviction are fundamentally inconsistent, I would reach the question presented. I would hold that the inconsistent verdicts doctrine applies, and I would affirm the Superior Court's order on that basis. As such, I join only in the result.

Muhammad was charged with, *inter alia*,[5] two firearms offenses: persons not to possess a firearm,[6] and carrying a firearm without a license.[7] With respect to the persons not to possess charge, Muhammad stipulated that a prior conviction rendered him ineligible to possess a firearm under the statute. At Muhammad's jury trial, in an apparent effort to avoid the prejudice that might result if the jury heard evidence of Muhammad's prior conviction, the parties and trial court agreed to the following procedure.

The trial court instructed the jury that Muhammad had been charged with various "crimes," including carrying a firearm without a license and "possessing a firearm"—the

---

[4]     *See* OAJC at 10.

[5]     Muhammad also was charged with forgery, conspiracy, and resisting arrest. He was acquitted of the first two offenses, and convicted on the third.

[6]     18 Pa.C.S. § 6105. This section provides:

A person who has been convicted of [an enumerated offense], within or without this Commonwealth, regardless of the length of sentence . . . shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

*Id.*

[7]     18 Pa.C.S. § 6106. With exceptions not relevant in this case, this section provides:

[A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

*Id.*

latter offense standing in for persons not to possess under Section 6105.[8]  Under the heading, "firearms not to be carried without license," the verdict slip asked the jury:

> Did the Defendant Rasheed Muhammad on December 18, 2018 carry a firearm, to wit a Smith & Wesson 38 Caliber Special, in a vehicle, or carry the firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under the Uniform Firearms Act?[9]

To respond to this question, the jury was given two options: "guilty" or "not guilty."[10]  The verdict slip also listed the following question, under the heading "possession of firearm:"

> Did the Defendant Rasheed Muhammad on December 18, 2018, possess and have under his control a firearm, to wit a Smith & Wesson 38 Caliber Special?[11]

The jury's two options for response to this question were: "yes" or "no."[12]  This question was presented to the jury in a manner that was otherwise identical to the other charges on the verdict slip.

Of course, "possession of firearm" is not a crime under Pennsylvania law. Unbeknownst to the jury, the trial court and the parties intended that, in the event that the jury responded "yes" to the possession question, the court would submit a complete instruction on persons not to possess, along with Muhammad's stipulation that he had

---

[8]     Notes of Testimony ("N.T."), 10/14/2021, at 119 (R.R. at 461) ("The Defendant in this case, Rasheed Muhammad, is on trial before you on information charging him with the following crimes: Forgery, Conspiracy to Commit Forgery, Resisting Arrest, *Possessing a Firearm*, and Firearms Not to Be Carried Without a License.  To each of these charges, the Defendant has pled not guilty and elected to be tried by a jury." (emphasis added)).

[9]     Verdict Slip, 10/14/2021, at 4 (R.R. at 69).  For the reader's benefit, I attach a copy of the verdict slip below.

[10]    *Id.*

[11]    *Id.*

[12]    *Id.*

been previously convicted of a disqualifying offense under Section 6105. The court would then ask the jury to determine whether Muhammad was guilty, or not guilty, of the offense.[13]

The jury found Muhammad guilty of carrying a firearm without a license. However, the jury answered "no" to the question of whether Muhammad possessed a firearm.[14] Consequently, the trial court did not instruct the jury on the remaining element of the persons not to possess a firearm offense. Instead, based upon the jury's response to the interrogatory, the trial court docketed a not guilty verdict on that charge.[15]

The OAJC errs in finding "no actual inconsistency" between the jury's responses, and in affirming on that basis. The OAJC undertakes a plain language review of Section 6016, and concludes that the offense of carrying without a license "does not require a finding of possession and control of the weapon."[16] This holding ignores our preexisting case law interpreting Section 6106. "Carrying" a firearm for purposes of Section 6106 requires either actual physical possession or constructive possession of the firearm. Actual physical possession necessarily involves control. Constructive possession, in turn,

---

[13] In chambers, after the jurors had begun their deliberations, the trial court informed counsel:

> When [the jury] come[s] back, they'll make a decision if they have possession, we'll send them back and tell them there's a stipulation that he's a—that he has a criminal history, a felony charge, a felon not to possess. This is the elements [*sic*] of the [persons not to possess] charge.

N.T., 10/14/2021, at 135 (R.R. at 477).

[14] Verdict Slip, 10/14/2021, at 4 (R.R. at 69).

[15] Docket Sheet at 5 (R.R. at 10) (verdict of "Not Guilty" entered as to the persons not to possess charge under Section 6105).

[16] OACJ at 8.

requires the power and intent to control.[17]  Mere presence in a car where firearms are found will not suffice to sustain a conviction under Section 6106.[18]  With that understanding, a finding that the defendant did not "possess and have under his control a firearm, to wit a Smith & Wesson 38 Caliber Special"[19] is a finding inconsistent with a conviction under Section 6106.  "Carrying" a gun per Section 6016 requires possession, which entails not only proximity, but also control or power and intent to control.[20]

Accepting the jury's two responses—"guilty" as to carrying without a license, but "no" as to the question of possession and control—as inconsistent, a question naturally arises:  Does this case involves two "verdicts" at all?  The possession inquiry posed to the jury in this case consisted of a special interrogatory; it did not solicit a verdict.  We must account for the distinction between civil and criminal verdicts, as well as the idiosyncratic process that the trial court used in the case at bar.

---

[17]    *Commonwealth v. Peters*, 218 A.3d 1206, 1209 (Pa. 2019).

[18]    *See Commonwealth v. Townsend*, 237 A.2d 192, 195 (Pa. 1968).

[19]    Verdict Slip, 10/14/2021, at 4 (R.R. at 69).

[20]    *See also Commonwealth v. Dixon*, 997 A.2d 368, 381-82 (Pa. Super. 2010) (conducting merger analysis for convictions under Sections 6105 and 6106 and observing no distinction between "possesses" and "carries"); *Commonwealth v. Magwood*, 538 A.2d 908, 909-10 (Pa. Super. 1988) (approving of jury instruction for Section 6106 stating that "[i]n order to carry a weapon, essentially, the defendant must be found to have been in possession of that weapon").

The OAJC's reasoning is difficult to follow.  As I understand it, the OAJC opines that one can have constructive possession of a firearm, and at the same time be said not to "have [a firearm] under his control," such that a negative response to the interrogatory would still be consistent with a Section 6106 conviction based on a constructive possession theory.  *See* OACJ at 11 n.8.  Constructive possession consists of the power and intent to control.  *Peters*, 218 A.3d at 1209.  I am not persuaded that these concepts— having something under one's control, a colloquialism used in the interrogatory, and the power and intent to control, germane to constructive possession under our case law— may be set at odds in any intelligible way sufficient to support the OAJC's labored distinction.

The types of verdicts available in civil and criminal cases differ from one another. In both contexts, a jury may render a general verdict, in which the jury announces the overall result in terms of which party prevailed.[21] The treatment of special verdicts and special interrogatories, however, differs. With a special verdict, the jury announces particular findings of fact, and the judge determines the legal outcome based upon those findings.[22] Special verdicts suffer from a fatal defect in the criminal context: they remove the outcome from the jury's hands, in violation of a criminal defendant's right to trial by jury.[23] Special interrogatories ask the jury specific factual questions.[24] Whereas our rules expressly authorize special interrogatories in civil cases,[25] there is no authority for them in criminal cases.[26] Indeed, this Court disfavors the latter.[27]

---

[21] *See Fritz v. Wright*, 907 A.2d 1083, 1091 (Pa. 2006).

[22] *Id.* at 1091 n.7; *see* Kate H. Nepveu, *Beyond "Guilty" or "Not Guilty": Giving Special Verdicts in Criminal Jury Trials*, 21 YALE L. & POL'Y REV. 263, 263-64 (2003).

[23] *United States v. Gaudin*, 515 U.S. 506, 514 (1995) ("[T]he jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence."); *see also* U.S. CONST. amend. VI.

[24] *Fritz*, 907 A.2d at 1091-92.

[25] *See* Pa.R.Civ.P. 2257.

[26] *Commonwealth v. Jacobs*, 39 A.3d 977, 987 (Pa. 2012) (plurality*); Commonwealth v. Samuel*, 961 A.2d 57, 63-64 (Pa. 2008). In the criminal context, this Court has used "special verdict" to refer to any factual question on the verdict slip. *See, e.g.*, *Samuel*, 961 A.2d at 63-64; *Jacobs*, 39 A.3d at 987. To avoid confusion, I distinguish between "true" special verdicts—in which the jury only reaches factual conclusions, from which the trial court then determines the legal outcome—and special interrogatories, supplied in addition to a general verdict. *See* Nepyeu, *supra* note 22, at 263-64 (distinguishing between a "true special verdict" and other factual findings by the jury).

[27] *Samuel*, 961 A.2d at 64; *see Commonwealth v. Hopkins*, 117 A.3d 247, 261 n.4 (Pa. 2015) (rejecting the argument that our statements regarding special verdicts in *Samuel* constituted dicta). This Court has suggested that special interrogatories may be necessary in certain cases so as to ensure that any fact that increases the defendant's sentencing range is submitted to the jury and found beyond a reasonable doubt, in accordance with the United States Supreme Court's decision in *Alleyne v. United States*. (continued…)

The trial court here presented the jury with a factual question: whether Muhammad was in possession of a firearm. Based on the jury's negative response, the trial court entered a verdict of acquittal. This process resembles a special verdict, which has no place in the criminal context.[28] Criminal defendants have the right to a jury trial, in which the jury actually determines the outcome, not merely the factual predicates to the ultimate verdict.[29] The trial court's decision to submit only a factual question on the persons not to possess charge, and to enter a verdict accordingly, undermined that right.

The possession question was not, in and of itself, a verdict. Rather, that question amounted to a "special interrogatory," seeking a factual conclusion that was germane to, although separate from, the general verdict on the carrying without a license charge. Still, our jurisprudence on inconsistent verdicts applies to this scenario, and precludes the jury's supplemental factual finding from undermining Muhammad's conviction for carrying without a license.

Criminal verdicts need not be consistent, nor even logical.[30] The United States Supreme Court has observed that inconsistent verdicts present an apparent "error," insofar as the jury has not followed the trial court's instructions.[31] Yet, it is unclear which

570 U.S. 99, 115-16 (2013); *see Commonwealth v. King*, 234 A.3d 549, 565-66 (Pa. 2020). This case presents no *Alleyne* issue.

[28]  Granted, the process deviates slightly from a true special verdict, in that the jury was not asked to determine "all material facts" on the persons not to possess charge. *See Fritz*, 907 A.2d at 1901 n.7).

[29]  Naturally, the defendant did not complain of this apparent violation of the defendant's (unwaived) right to trial by jury on the persons not to possess charge. In the instant case, it resulted in his acquittal on the charge. Docket Sheet at 5 (R.R. at 10) (verdict of "Not Guilty" entered as to the persons not to possess charge under Section 6105).

[30]  *See Powell*, 469 U.S. at 69.

[31]  *Id.* at 65; *see Commonwealth v. Campbell*, 651 A.2d 1096 at 1100-01 (Pa. 1994) (endorsing the Supreme Court's discussion of inconsistent criminal verdicts in *Powell*).

party benefited from the "error"—the defendant, or the prosecution. While one of the parties evidently has been harmed, "it is unclear whose ox has been gored."[32] The Supreme Court of the United States has recognized that inconsistent verdicts may be founded upon "mistake, compromise, or lenity."[33] In order to ascertain the rationale underlying the inconsistent verdict, a court would be forced to speculate about, or probe into the jury's deliberations, an enterprise which courts generally do not, and should not, undertake.[34] Judge Learned Hand viewed inconsistent verdicts as follows:

> The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.[35]

Nor is a defendant faced with inconsistent verdicts without adequate recourse. The defendant may seek sufficiency review of the offenses for which he or she was convicted.[36]

These concerns retain force. In Muhammad's view, a jury's answer to an express factual question, unlike an acquittal, eliminates the need for "guesswork" as to the jury's real conclusions.[37] Not so. Juries are not bound to reveal the factual conclusions that

---

[32] *Powell*, 469 U.S. at 65.

[33] *Id.*

[34] *Id.* at 58.

[35] *Id.* at 63 (quoting *Steckler v. United States*, 7 F.2d 59, 60 (2d Cir. 1925)); *accord Dunn v. United States*, 584 U.S. 390, 393 (1932). As Judge Hand went on to explain, "That the conviction may have been the result of some compromise is, of course, possible; but to consider so is to consider too curiously, unless all verdicts are to be upset on speculation." *Steckler*, 7 F.2d at 60.

[36] *Powell*, 469 U.S at 67.

[37] *See* Muhammad's Br. at 24-25.

underpin the general verdict, nor any supplemental factual conclusions divorced from that verdict and unrelated to sentencing. Jurors have as much reason to compromise, exercise lenity, or err in answering a "yes" or "no" question as they do in finding a defendant "guilty" or "not guilty" of a particular offense. The same fundamental problem inherent in inconsistent verdicts adheres to a conflict between a general verdict and a special interrogatory: it cannot be known which answer reflects the jury's "real" conclusions—the general verdict or the special interrogatory.

These problems loom especially large in this case. The jurors had reason to believe that their answer to the possession question could expose Muhammad to further criminal liability. In its instructions to the jury, the trial court listed "possessing a firearm" as one of the "crimes" for which Muhammad was charged.[38] The corresponding question on the verdict slip, labeled "Possession Of Firearm," appeared, in all respects (except for the form of the jury's response) identical to the other criminal charges listed. And it was listed separately from the Section 6106 charge on carrying without a license, with nothing to suggest that the jury's answer on possession was related to the Section 6106 charge.[39] On these facts, a jury would be justified in believing that a "yes" response could have saddled Muhammad with additional criminal liability upon the possession "offense" with which they were presented. And they would have been right. According to the trial court's plan, an affirmative answer would have triggered submission of the persons not to possess charge to the jury. The fundamental concerns that underlie the inconsistent verdicts doctrine are as relevant to a verdict and special interrogatory in conflict with one another as they are to a pair of conflicting verdicts.

---

[38]  N.T., 10/14/2021, at 119 (R.R. at 461).

[39]  *See* Verdict Slip, 10/14/2021, at 4 (R.R. at 69); *Commonwealth v. Muhammad*, 289 A.3d 1078, 1092 (Pa. Super. 2023).

The central tenet of the inconsistent verdicts doctrine is that courts will not disturb a jury's verdict on one charge on account of a contradictory conclusion on another. To set aside this principle when a conviction is pitted against a special interrogatory would be to assume, erroneously, that the response to the question of possession revealed the jury's real conclusions, and that the guilty verdict did not. Crediting the interrogatory response as the "truth" involves taking an impermissible look behind the verdict on the carrying without a license charge, and speculating as to the factual underpinnings that the special interrogatory attempted to expose.

The United States Supreme Court very recently has acknowledged that, even when there are specific factual findings that provide a basis for conjecture as to the reason for a jury's inconsistent verdicts, "it is impossible for a court to be certain about the ground for the verdict without improperly delving into the jurors' deliberations."[40] The Court recognized this uncertainty in the course of holding that a jury's finding of "not guilty by reason" of insanity amounted to an acquittal, to which Double Jeopardy protections had attached.[41] The Court's observation that specific jury findings do not render a general verdict transparent is equally pertinent to a conviction.

We cannot know whether the jury's true belief here lay in response to the special interrogatory or in the conviction, nor should we endeavor to find out. Instead, accepting that the two are equally opaque, we should leave the jury verdict as we found it, subject to review for sufficiency of the evidence.[42] In conducting that review, the jury's response

---

[40] *McElrath v. Georgia*, 601 U.S. 87, 97 (2024) (quoting *Smith v. United States*, 599 U.S. 236, 252-53 (2023)).

[41] *See id.* at 98.

[42] *See Powell*, 469 U.S. at 63.

to the question of possession does not bear on the question of carrying without a license.[43]

"Special findings" by a criminal jury cannot serve as a basis to vacate that jury's general verdict, because questions seeking an explanation of a jury verdict invade the province of the jury. Special findings may be useful, even necessary, for sentencing purposes.[44] But where the interrogatory forces the jury to explain or justify the outcome that it has reached, the question has the potential to exert undue influence on the jury's deliberations.[45] As the United States Court of Appeals for the First Circuit has explained:

> [We are concerned] with the subtle, and perhaps open, direct effect that answering special questions may have upon the jury's ultimate conclusion. There is no easier way to reach, and perhaps force, a verdict of guilty than to approach it step by step. A juror, wishing to acquit, may be formally catechized. By a progression of questions each of which seems to require an answer unfavorable to the defendant, a reluctant juror may be led to vote for a conviction which, in the large, he would have resisted. The result may be accomplished by a majority of the jury, but the course has been initiated by the judge, and directed by him through the frame of the questions.[46]

Vacating the general verdict on account of the jury's response to a special interrogatory undermines the jury's exclusive power to render a verdict as to guilt or innocence.[47]

---

[43]     *Id.* at 67; *Carter*, 282 A.2d at 376 ("An acquittal cannot be interpreted as a specific finding in relation to some of the evidence.").

[44]     *See King*, 234 A.3d at 565-66 (suggesting acceptance of the use of a special interrogatory as to a fact that would increase the maximum sentence for the offense charged, in order to comply with *Alleyne*); *United States v. Barrett*, 870 F.2d 953, 955 (3d Cir. 1989) (distinguishing special interrogatories seeking to explain the general verdict from special interrogatories being used "to assist in sentencing").

[45]     *See United States v. Spock*, 416 F.2d 165, 182 (1st Cir. 1969).

[46]     *Id.*

[47]     *See Barrett*, 870 F.2d at 955 (explaining that using a criminal jury's answers to special interrogatories in order to resolve ambiguities in the general verdict "would constitute a manifest invasion of the jury's exclusive deliberative function in arriving at a verdict").

Special interrogatories seeking an explanation of the general verdict are an attempt to confine the jury to a logical decision. But a criminal jury is not constrained to decide by logic, or logic alone. Its verdict cannot, and should not, be vacated on the grounds that it is illogical.[48]

For all of these reasons, the jury's response to the question of possession does not justify setting aside the jury's general verdict on Section 6106.

I would also take this opportunity to eliminate the confusion engendered in our case law for two decades by *Commonwealth v. Magliocco*.[49] In *Magliocco*, this Court held that, where one offense is defined by statute to require the commission of another, predicate offense, an acquittal on the predicate offense renders the evidence insufficient to sustain a conviction on the encompassing offense.[50] This tortured decision never offered an intelligible or viable exception to the inconsistent verdicts doctrine, and it does not do so now. Indeed, that *Magliocco* already has at least twice been cabined to its facts[51] is suggestive of some blushing recognition in this Court that it fails to support an exception to the general rule in cases involving compound offenses.[52] This Court should

---

[48]    *See Spock*, 416 F.2d at 182 ("[T]he jury, as the conscience of the community, must be permitted to look at more than logic. . . . The constitutional guarantees of due process and trial by jury require that a criminal defendant be afforded the full protection of a jury unfettered, directly or indirectly.").

[49]    883 A.2d 479 (Pa. 2005).

[50]    *Id.* at 493.

[51]    *See infra* note 58.

[52]    By "compound offense," I refer to any offense that requires, as an element of that offense, a finding that the defendant has committed another, predicate offense.

take this opportunity now to recognize (and to announce) that *Magliocco* was wrongly decided and is overruled.[53]

In *Magliocco*, the defendant was charged with ethnic intimidation.[54] An element of that crime requires that the defendant has committed an enumerated predicate offense. A defendant need not be separately charged or convicted of the predicate offense for purposes of proceeding under the ethnic intimidation statute. Magliocco, however, was charged with both ethnic intimidation and an underlying predicate offense, terroristic threats.[55] In a bench trial, the court convicted him of ethnic intimidation, but acquitted him of terroristic threats.[56]

This Court acknowledged that inconsistency in verdicts is not a basis to set aside a conviction, but considered the case to present an "unusual circumstance" where the defendant was charged with, and acquitted of, the predicate offense to the conviction. This Court stated that the acquittal on terroristic threats amounted to "a finding that, for whatever reason, the Commonwealth failed to prove beyond a reasonable doubt that the

---

[53] The fact that the parties have not requested the overruling of a precedent is no categorical impediment to such overruling, inasmuch as this would at times render us helpless to abrogate indefensible, unsustainable, or conflicting case law. *See Commonwealth v. Jackson*, 302 A.3d 737, 773 n.38 (Pa. 2023) (Wecht, J., Opinion in Support of Reversal); *Commonwealth v. Ortiz*, 197 A.3d 256, 262 n.1 (Pa. 2018) (Wecht, J., dissenting); *Cagey v. Commonwealth*, 179 A.3d 458, 473 n.7 (Pa. 2018) (Wecht, J., concurring); *William Penn Sch. Dist. v. Pa. Dep't of Educ.*, 170 A.3d 414, 446 n.49 (Pa. 2017) ("We would encourage the perpetuation of poorly reasoned precedent were we to permit ourselves to revisit the soundness of our case law only when expressly invited to do so based upon a given party's tactical decision of whether to attack adverse case law frontally . . . or to attempt more finely to distinguish the adverse decisions. The scope of our review is not so circumscribed.").

[54] 18 Pa.C.S. § 2710. This statute has since been held unconstitutional. *Marcavage v. Rendell*, 936 A.2d 188, 194 (Pa. Cmwlth. 2007), *affirmed*, 951 A.2d 345 (Pa. 2008).

[55] 18 Pa.C.S. § 2706.

[56] *Magliocco*, 883 A.2d at 481.

defendant 'committed' terroristic threats."[57]   In light of that "finding" and the "special weight" attributed to acquittals, this Court vacated Magliocco's conviction for ethnic intimidation.

Twice, and without any convincing, principled distinction, this Court has limited *Magliocco* to cases under the ethnic intimidation statute.[58]  *Magliocco* certainly cannot be understood to articulate a general exception to the inconsistent verdicts doctrine in cases involving compound offenses.

*Magliocco* was wrongly decided. It violates the cardinal rule of our inconsistent verdicts jurisprudence: that an acquittal is not to be regarded as a finding of fact.[59]  The *Magliocco* Court erroneously assumed that the acquittal represented the jury's "real" conclusions.  It is just as possible that the conviction represented the "truth," and that the acquittal was the result of compromise, lenity, or mistake.  Our inability to know which of the two verdicts represents the jury's real beliefs leads us to sufficiency review of the one that yielded a conviction.

This Court has tried to reconcile *Magliocco* with our jurisprudence.   In *Commonwealth v. Moore*, the Court attempted to align *Magliocco* with the fundamental principle it contradicts:  "It was the fact of the jury's acquittal—not any factual inference

---

[57]     *Id.* at 493.

[58]     *See Commonwealth v. Moore*, 103 A.3d 1240, 1248 (Pa. 2014) ("[W]e reject any notion that *Magliocco . . .* represent[s an exception] to the long-standing principles that juries may issue inconsistent verdicts and that reviewing courts may not draw factual inferences in relation to the evidence from a jury's decision to acquit a defendant of a certain offense."); *Miller*, 35 A.3d at 1213 (explaining that *Magliocco* is "not generally applicable to other offenses"); *see also Moore*, 103 A.3d at 1251 (Saylor, J., concurring) ("[A]fter *Miller*'s issuance, it should be reasonably clear *Magliocco* has been effectively limited to its facts.").

[59]     *See Moore*, 103 A.3d at 1247 ("[W]e may not interpret a jury acquittal as a specific factual finding with regard to the evidence." (citing collected cases)).

drawn from the acquittal—and the statutory elements that drove our discussion."[60]  But the ethnic intimidation statute at issue in *Magliocco* was not concerned with whether there had been a conviction on the predicate offense, only whether a predicate offense had been committed.[61]  With respect to that element, the only relevant inference to be drawn from an acquittal is the very inference that our jurisprudence forbids: the factual inference that the defendant did not commit the predicate offense.

*Magliocco* marked an unwarranted departure from our longstanding rule, and it should be afforded no lingering precedential value.  Because *Magliocco* is fundamentally inconsistent with our doctrine, we should overrule it.[62]

---

[60]     *Id.* at 1248.

[61]     In contrast, where a statute requires *conviction* of an underlying offense—and not just commission—the "fact of an acquittal" on the underlying offense renders the evidence insufficient.  *See Commonwealth v. Caine*, 683 A.2d 890, 893-94 (Pa. Super. 1996).

[62]     More recently, this Court revisited *Magliocco* in *Commonwealth v. Baker-Myers*, 255 A.3d 223 (Pa. 2021).  There, a jury convicted the defendant of corruption of a minor, under 18 Pa.C.S. § 6301(a)(1).  That section provides:

> Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age . . . commits a felony of the third degree.

18 Pa.C.S. § 6301(a)(1).  The jury acquitted the defendant, however, on all of the Chapter 31 counts (sexual offenses) submitted to the jury.  This Court affirmed the Superior Court's decision vacating the conviction.  We reasoned that, as in *Magliocco*, the "fact of the jury's acquittal—and not any factual inference drawn from the acquittal," undermined the conviction.  *Baker-Myers*, 225 A.3d at 235.

For the same reasons detailed above, the *Baker-Myers* Court erred in relying upon *Magliocco*.  The "fact of the acquittal" had no bearing on the compound offense, because, as in *Magliocco*, the compound offense did not require a conviction on the predicate offense.  Again, the only relevant inference to be drawn from the acquittal was the impermissible inference as to specific evidence in the case.  For these reasons, my joinder in the *Baker-Myers* majority was erroneous.

Our inconsistent verdicts doctrine has been—apart from *Magliocco*—clear and straightforward. Inconsistency is not a basis to vacate a jury verdict. Courts are not to infer facts as to specific evidence from an acquittal. An acquittal does not render the evidence insufficient as to a conviction on account of an inconsistency between the two. The jury in this case returned a conviction as to carrying without a license, and factual findings on which the trial court then proceeded (improperly) to enter an acquittal as to persons not to possess. The inconsistency between the two jury responses on the element of possession is not a basis to vacate the conviction. The Superior Court properly reviewed the conviction for sufficiency, independent of the jury's response to the possession question.[63] Although the possession question amounts to a special interrogatory, and not a verdict, the inconsistent verdicts doctrine applies to the same end. When a criminal jury enters inconsistent verdicts, it is impossible to know which of those represents its true belief. It is just as impossible to know whether the jury has revealed its true beliefs in a conviction or in a response to a special interrogatory. Over many years, our precedent has repeatedly yielded the same wisdom: in light of our ignorance, we leave both conclusions undisturbed, and we subject the conviction to ordinary sufficiency review.

In the case at bar, the evidence that Muhammad possessed a firearm for purposes of carrying without a license, viewed in the light most favorable to the Commonwealth as verdict winner, supports the jury's finding of guilt beyond a reasonable doubt on that charge.[64] Therefore, I would affirm.

---

[63] *Muhammad*, 289 A.3d at 1091.

[64] *See In re J.B.*, 189 A.3d 390, 414 (Pa. 2018) (explaining the standard of review for a sufficiency claim).

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :     CP-23-CR-1435-2019
:
:
:
**v.**                               :
:
:
**RASHEED MUHAMMAD**           :

Matthew DeNucci, Esquire, Attorney for the Commonwealth
Kevin M. O'Neill, Esquire, Attorney for Defendant

## VERDICT

We, the jury, after careful consideration of the evidence, render the following verdict:

## I.    FORGERY

### A. BY UNAUTHORIZED ACT IN WRITING

Did the Defendant Rasheed Muhammad on December 18, 2018 with intent to defraud or injure another, to wit PNC Bank, or with knowledge that he was facilitating a fraud or injury to be perpetrated by another, make, complete, execute, authenticate, issue, or transfer a writing so that it purported to be the act of another who did not authorize that act, or have been executed at a time or place, or in a numbered sequence, other than was in fact the case, or to be a copy of an original when no such original existed; the writing was purported to be a will, deed, contract, release, commercial instrument, or other document evidencing, creating, transferring, altering, terminating, or otherwise affecting legal relations?

_____                           ✓_____
GUILTY                                          NOT GUILTY

## B. BY UTTERING FORGED WRITING

Did the Defendant Rasheed Muhammad on December 18, 2018 with intent to defraud or injure another, to wit PNC Bank, or with the knowledge that he was facilitating a fraud or injury to be perpetrated by another, utter a writing which he knew to be forced in a manner by altering any writing of another without his authority or making, completing, executing, authenticating, issuing or transferring any writing so that it purported to be the act of another who did not authorize the act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; the writing was or purported to be a will, deed, contract, release, commercial instrument, or other document evidencing, creating, transferring, altering, terminating, or otherwise affecting legal relations?

_____                                     ___✓_____
GUILTY                                                    NOT GUILTY


## II.    CONSPIRACY

### A. CONSPIRACY TO COMMIT FORGERY - BY UNAUTHORIZED ACT IN WRITING

Did the Defendant Rasheed Muhammad on December 18, 2018 with the intent of facilitating the commission of a crime, to wit, forgery, agree with Geraldine Biggs and Henry Clark that they or more than one of them would engage in conduct which would constitute forgery by unauthorized act in in writing, or an attempt or solicitation to commit such crime, and/or agree to aid them in the planning or commission of a forgery by unauthorized act in writing or of an attempt or solicitation to commit such crime?

_____                                     ___✓_____
GUILTY                                                    NOT GUILTY

## B. CONSPIRACY TO COMMIT FORGERY - BY UTTERING FORGED WRITING

Did the Defendant Rasheed Muhammad on December 18, 2018 with the intent of facilitating the commission of a crime, to wit, forgery, agree with Geraldine Biggs and Henry Clark that they or more than one of them would engage in conduct which would constitute forgery by uttering a forged writing, or an attempt or solicitation to commit such crime, and/or agreed to aid them in the planning or commission of a forgery by uttering a forged writing or of an attempt or solicitation to commit such crime?

_____
GUILTY

_____ ✓
NOT GUILTY

## III. RESISTING ARREST/OTHER LAW ENFORCEMENT

Did the Defendant Rasheed Muhammad with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, create a substantial risk of bodily injury to the public servant or someone else, or employed means justifying or requiring substantial force to overcome the resistance?

_____ ✓
GUILTY

_____
NOT GUILTY

## IV. POSSESSION OF FIREARM

Did the Defendant Rasheed Muhammad on December 18, 2018 possess and have under his control a firearm, to wit a Smith & Wesson 38 Caliber Special?

_____ ✓
YES                          _____
                            NO

## V. FIREARMS NOT TO BE CARRIED WITHOUT LICENSE

Did the Defendant Rasheed Muhammad on December 18, 2018 carry a firearm, to wit a Smith & Wesson 38 Caliber Special, in a vehicle, or carry the firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under the uniform firearms act?

✓
_____
GUILTY                       _____
                            NOT GUILTY

_Alyssa Drinkard_
FOREPERSON

10/14/21
DATE